IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-9092-CM-TJJ |
| | ) | |
| AFAQ AHMED MALIK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is a denaturalization case brought by Plaintiff United States of America ("the Government") against naturalized citizen Defendant Afaq Malik ("Malik"). This matter is pending before the Court on Defendant Malik's Motion for Protective Order (ECF No.  39). Pursuant to Fed. R. Civ. P. 26(c) and 45(d)(3), Malik requests that the Court enter a protective order prohibiting the Government from deposing his 19-year-old daughter, Abrish Afaq ("Ms. Afaq") or, if the deposition is allowed, limiting the deposition to certain topics. For the reasons set forth below, Malik's motion is denied to the extent it seeks to prohibit Ms. Afaq's deposition in its entirety, but is granted in part to the extent it requests limitations on the deposition.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

In this action, the Government seeks the revocation of Malik's United States citizenship based upon his allegedly having bigamous relationships that he concealed and lied about, and that disqualified him from lawfully becoming a United States citizen. Specifically, the Government contends Malik obtained lawful permanent resident status and eventually naturalized based on his claimed marriage to a United States citizen, Venita Ann McIntosh ("McIntosh").  That marriage, however, the Government claims was bigamous and invalid

because Malik secretly remained married to his first wife, Kaneez Fatima ("Fatima"), a citizen and national of Pakistan. Therefore, according to the Government, Malik's claimed relationship with his United States citizen spouse did not lawfully confer any immigration status and Malik was not *lawfully* admitted for permanent residence or statutorily eligible to naturalize.

In addition, the Government alleges that Malik concealed the existence of his first wife, Fatima, and their two children, Ms. Afaq and her younger brother.  The Government further contends that Malik willfully misrepresented these material facts during the legal permanent residency application process, and therefore Malik was not eligible for admission as a United States citizen.  Finally, the Government alleges Malik lacked the required good moral character because he committed bigamy and practiced polygamy when he allegedly remarried his first wife while still married to his U.S.-citizen spouse.[1]

The Government deposed Malik on March 22, 2016.  A week later, on March 30, 2016, counsel for the Government provided Malik's counsel with a copy of the Government's proposed deposition subpoena for Malik's daughter, Ms. Afaq.[2]  Counsel for Malik then contacted the Government's counsel seeking to prevent Ms. Afaq's deposition, or to set some agreed limits on the deposition topics.  Malik's counsel expressed concern that the deposition would embarrass and place an undue burden on the 19-year-old Ms. Afaq if questions were asked about culturally taboo topics such as sex and divorce, particularly as they would pertain to her father.  Counsel for Malik and the Government were not able to reach an agreement avoiding

---

[1] The relevant facts set out in the preceding paragraphs are taken from the Preliminary Statement section of the Government's Complaint to Revoke Naturalization (ECF No. 1) and First Amended Complaint to Revoke Naturalization (ECF No. 56).

[2] *See* Cert. of Service (ECF No. 45) for the proposed deposition subpoena for Ms. Afaq.

or limiting the deposition. On April 15, 2016, Malik filed the instant motion for a protective order.

## II.   LAW REGARDING MOTIONS FOR PROTECTIVE ORDERS PRECLUDING DEPOSITIONS OF NON-PARTIES

Under Federal Rule of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[3] This may include forbidding the discovery, forbidding inquiry into certain matters, or limiting the scope of discovery to certain matters.[4] The party seeking a protective order has the burden to demonstrate good cause.[5] Such party "must submit a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[6]

Rule 26(c) grants a court "substantial latitude to fashion protective orders" upon weighing the competing needs and interests of parties affected by discovery.[7] The court also considers other factors that were or could have been presented by the party seeking the discovery to determine whether the totality of the circumstances justifies the entry of a protective order.[8] Depositions are ordinarily allowed unless it is clear that the information sought has no possible bearing on the matter at hand.[9]

---

[3] Fed. R. Civ. P. 26(c)(1).

[4] Fed. R. Civ. P. 26(c)(1)(A) and (D).

[5] *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000).

[6] *Board of Comm'rs of Shawnee Cnty., Kan. v. Daimler Trucks N. Am.*, *LLC*, No. 15-4006-KHV, 2015 WL 9164248, at *2 (D. Kan. Dec. 15, 2015).

[7] *Kear v. Kohl's Dep't Stores, Inc.*, No. 12-1235-JAR-KGG, 2013 WL 5304052, at *2 (D. Kan. Sept. 20, 2013) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

[8] *Id.*

[9] *Id.* (citing *Leighr v. Beverly Enters.-Kan., Inc.*, 164 F.R.D 550, 551–52 (D. Kan. 1996)).

### III.   MALIK'S REQUEST FOR A PROTECTIVE ORDER PROHIBITING MS. AFAQ'S DEPOSITION ALTOGETHER IS DENIED.

As a preliminary matter, the Government does not dispute that Malik has standing to request a protective order precluding the Government from deposing his 19-year-old daughter, or requesting limitations on her deposition.  In any event, Malik would have standing in this case because he has a personal right or privilege with respect to the subject matter sought by the deposition subpoena,[10] namely deposition questions eliciting information regarding his marital relations with his wives.

In his motion for protective order, Malik contends the Government should not be allowed to depose Ms. Afaq because (1) she has no information concerning the very limited subject matter of this lawsuit, and (2) the deposition would likely impose an undue burden and cause her embarrassment. Malik first argues that Ms. Afaq should not be deposed because she lacks knowledge of the events alleged in the complaint.  Specifically, Malik contends the relevant events alleged in the Complaint occurred between 2000, when he entered the United States, and 2004, when he was interviewed on his application for U.S. citizenship. He argues that Ms. Afaq was only three years old when he came to the United States and married his second wife; she was only seven years old at the time of his naturalization interview, and she was living in Pakistan the entire time these events allegedly occurred. Malik asserts that Ms. Afaq confirmed in her Declaration that she is not aware why her father came to the United States, what he did in the United States when she was a child, or whether or why he applied for citizenship.  Instead, Malik claims the only "fact" Ms. Afaq has information on is that her mother told her when she was 15

---

[10] *See Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995) ("A motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena.").

years old that her father had divorced her mother when Ms. Afaq was very young. But because

of Ms. Afaq's sheltered upbringing in a Muslim family in Pakistan, she did not even know what

"divorce" was. And she has never asked her parents any questions or learned anything more

about this topic since then, because in her culture children do not talk about these things with

their parents. Thus, Malik argues, Ms. Afaq literally has nothing to offer in a deposition.

Malik also argues that being deposed is likely to place an undue burden on Ms. Afaq and

cause her embarrassment. She is a 19-year-old Muslim woman who lived in Pakistan until she

came to the United States when she was 15 or 16.[11]  Ms. Afaq states in her Declaration that "[i]t

would be especially embarrassing given [her] beliefs and culture to have to be asked questions

about [her] father's marital and sexual relations."[12] She also states that she does not want to

know about or talk about these topics, because she doesn't feel it is her place to know these

things.[13] Malik asserts the Government's "sole reason for deposing Ms. Afaq in this case is to

embarrass [him] and perhaps her as well by asking her questions about scandalous, personal

issues about which she has no knowledge."[14]

In its response to Malik's motion for protective order, the Government argues that the

nature of Malik's familial life, and when and if he married, divorced, and/or remarried are at the

heart of these proceedings to revoke Malik's citizenship.  One such asserted claim for revocation

is based upon Malik's deposition testimony that he divorced Fatima in May 2000 and remarried

her in July 2007, which was nearly four months before Malik divorced his U.S.-citizen wife

---

[11] Afaq Decl., ECF No. 40-1, at ¶¶ 1, 4.

[12] *Id.* at ¶ 7.

[13] *Id.*

[14] *Id.* at ¶ 3.

McIntosh on November 19, 2007. The Government further argues that Malik has provided

several conflicting statements, both oral and written, concerning his marital history.

The Government contends Ms. Afaq's broad statements in her Declaration that she has no

information about these subjects are insufficient to preclude her deposition, citing *Horsewood v.*

*Kids "R" Us*.[15] In any event, the Government argues that Ms. Afaq's Declaration suggests

otherwise—that is, she does have some information regarding her parents' alleged divorce, and

the Government should be allowed to inquire to test her knowledge. For example, it would like

to inquire regarding the extent to which Ms. Afaq does know about her parents' divorce.

Moreover, the Government argues there are additional topics, beyond those regarding which Ms

Afaq claims ignorance in her affidavit, about which the Government seeks to inquire. One such

topic is the January 1, 2013 N-600 Application for Certificate of Citizenship ("N-600") that Ms.

Afaq signed, but which Malik testified he filled out. Ms. Afaq's N-600 is of interest to the

Government because it asks how many times her father, Malik, was married and contains the

answer "two."

The record in this case is replete with issues and in some instances apparent

inconsistencies concerning specifically when, whether, and to whom Malik has been married,

divorced, and/or remarried.  The Government provides the following example of one of these

inconsistencies in its response:

> In discovery, [Malik] produced what he contends is a Pakistani certificate of
> divorce from Kaneez Fatima dated June 5, 2000. *See, e.g.*, ECF No. 40-3 (alleged
> Pakistani divorce document). Yet [Malik] attested on both his signed Form I-485
> Application to Register Permanent Residence or Adjust Status ("I-485"), dated
> November 21, 2000, and his Form N-400 Application for Naturalization ("N-

---

[15] No. 97-2441-GTV, 1998 WL 526589, at *6 (D. Kan. Aug. 13, 1998) ("As a general rule a party seeking discovery may test an asserted lack of knowledge.").

400"), dated April 5, 2004, that he had *no* prior marriages or children—and testified to the same under oath. *See* Compl. at 3-7.[16]

Another apparent inconsistency is raised by the January 1, 2013 N-600 Application for Certificate of Citizenship ("N-600") that Ms. Afaq signed, but which Malik testified he filled out, indicating he had only been married "two" times. Given such apparent inconsistencies, the Government should be allowed to depose Ms. Afaq regarding her knowledge of when, whether, and to whom Malik has been married, divorced, and/or remarried. These issues are at the crux of this case.

Contrary to Malik's assertion, the relevant time period for purposes of discovery in this case is not limited to the period from 2000 to 2004, when Ms. Afaq was three to seven years old. The Government contends the statutory good moral character period applicable in this case includes the five years preceding Malik's naturalization on January 15, 2009. In addition, the recently filed First Amended Complaint asserts additional claims based upon Malik's alleged divorce from Fatima in May 2000 and remarriage to her in *July 2007,* prior to Malik's divorce from his U.S.-citizen wife McIntosh in *November 2007*.

Notwithstanding Ms. Afaq's professed lack of knowledge and information, the Government is entitled to test her knowledge and information concerning matters that may bear upon the alleged claims and defenses in this case.[17] The cases cited by Malik in support of his argument that the Court should enter a protective order prohibiting the Government from taking Ms. Afaq's deposition are distinguishable from this case. In this case, the Government references ample bases and topics relevant to the issues in the case upon which it desires to inquire of Ms. Afaq. The Court does not find, as Malik suggests, that the Government seeks to depose Ms. Afaq

---

[16] Pl.'s Resp., ECF No. 46, at 6 n.6.

[17] *Horsewood*, 1998 WL 526589, at *6.

7

for purposes of harassing Malik or Ms. Afaq.  Moreover, unlike cases Malik cites,[18] Ms. Afaq is

not the CEO or an upper level management employee of a corporate party who has filed a

declaration or affidavit stating that she has no knowledge of the facts alleged.

To the contrary, the following statements in Ms. Afaq's Declaration suggest that she may

have information relevant to this case: When Ms. Afaq was a child, Malik would call home to

talk with her; when she was a little older, Malik came back to Pakistan several times for short

visits; Ms. Afaq came to the United States when she was 15 or 16 years old and currently lives in

her father's house;[19] and the day before Ms. Afaq left Pakistan, Ms. Afaq's mother told her for

the first time that she and Malik had problems and divorced. Additionally, the  January 1, 2013

N-600 form that Ms. Afaq signed raises questions concerning what Ms. Afaq may know or

understand regarding her father's marriages, divorces, and/or remarriages.

Malik's arguments that Ms. Afaq should not be deposed either because of her young age

at the limited times he claims relevant to this case or because she is only 19 now are not

persuasive. As the Government correctly notes, Malik has not argued that Ms. Afaq is not

competent to testify. There is nothing in this record suggesting that Ms. Afaq, who is now 19, is

incompetent to testify. Malik's argument that Ms. Afaq, who is under twenty-one years of age,

would be considered a "child" under the Immigration and Nationality Act[20] does not convince

the Court that she is incompetent to testify at a deposition.  The Government is entitled to inquire

---

[18] *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 483–84 (10th Cir. 1995); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979).

[19] Ms. Afaq's Declaration does not indicate whether she began living with her father, Malik, immediately upon her arrival in the United States. If so, she has lived with him since 2011 or 2012.

[20] *See* 8 U.S.C. § 1101(b)(1) (defining "child" as "an unmarried person under twenty-one years of age" who falls into one of six categories).

and test her knowledge and information regarding the issues in this case.  The Court also notes

that another case from the District of Kansas has previously denied a motion for a protective

order seeking to prohibit the defendant in that case from taking the deposition of the plaintiff's

17-year-old daughter, where the plaintiff asserted reasons for objecting to the deposition similar

to those asserted in this case. In *Ammon v. Baron Automotive Group*, the plaintiff in an

employment discrimination case argued that anticipated sexually explicit deposition topics would

embarrass her daughter, her daughter was in an emotionally fragile condition, and the

information sought was discoverable from other sources.[21] The *Ammons* court found that the

plaintiff failed to make the "particular and specific demonstration of fact" required to establish a

"clearly defined and very serious injury."[22]  It further found that the fact that the information

sought may be available from other sources was not sufficient grounds to issue an order

prohibiting the deposition from going forward.[23]

As noted previously, protective orders seeking to prohibit depositions altogether are

generally not granted unless the information sought by the deposition has no possible relevance

to the claims or defenses in the case. The Court finds in this case Malik has not met his burden to

show good cause to preclude the Government from deposing Ms. Afaq. Rather, the Court will

allow the Government to depose Ms. Afaq to ascertain whether, by observation or from

information communicated to her by Malik, her mother, or others, Ms. Afaq has any knowledge

or information that may be relevant to the issues in this case, namely specifically when, whether,

---

[21] No. 02-2242-KHV, 2003 WL 1913526, at \*1 (D. Kan. Feb. 4, 2003).

[22] *Id.*

[23] *Id.*

and to whom Malik has been married, divorced, and/or remarried.  Malik's request for a

protective order that seeks to prohibit Ms. Afaq's deposition in its entirety is therefore denied.

**IV.     MALIK'S ALTERNATIVE REQUEST FOR A PROTECTIVE ORDER PLACING
LIMITATIONS ON MS. AFAQ'S DEPOSITION IS GRANTED IN PART.**

Malik also argues that allowing Ms. Afaq to be deposed regarding her father's marital

and sexual relations would place an undue burden upon her and cause her embarrassment

because of her beliefs and culture. The Court is not insensitive to concerns expressed by Ms.

Afaq in her Declaration about answering questions concerning her father's sexual relations.

Pursuant to Rule 26(c)(1), the Court has discretion, upon a showing of good cause, to enter an

order to protect Ms. Afaq from embarrassment or undue burden. The Court finds that entry of a

protective order in this case for that purpose is warranted and the Court will do so, but only to the

following limited extent:

The Government shall not pose any questions to Ms. Afaq concerning her father's sexual

relations, sexual activities, or with whom he is currently or has been sleeping.  The Court will

also place a limitation of no more than three (3) hours on Ms. Afaq's deposition. The Court

declines to place any other restrictions on Ms. Afaq's deposition. To be clear, the Court is not

imposing any restriction on questions to Ms. Afaq concerning her father's marriages, divorce(s),

and/or remarriage(s), or concerning who has lived in the home where Malik has resided at times

relevant to this case.  The Court expects counsel to review the Pillars of Professionalism and the

Deposition Guidelines on the Court's website, before the deposition of Ms. Afaq, and to conduct

themselves accordingly.

Finally, Malik requests that the Government be ordered to pay his reasonable attorney's

fees and expenses in defending Ms. Afaq's deposition.  The Court denies the request. The Court

is permitting the Government to depose Ms. Afaq and denying Malik's request for protective

order, except to the extent of the few limitations placed on the deposition specifically set out herein. The Court thus finds no justification for requiring the Government to pay the attorney's fees and expenses of Malik's counsel in defending Ms. Afaq's deposition.

**IT IS THEREFORE ORDERED THAT** Defendant Malik's Motion for Protective Order (ECF No. 39) is granted in part and denied in part. The motion is denied insofar as it seeks to prohibit Ms. Afaq's deposition in its entirety. The motion is granted in part insofar as the Government shall not pose any deposition questions to Ms. Afaq concerning her father's sexual relations, sexual activities, or with whom he is currently or has been sleeping. The Court will also place a limitation of no more than three hours on Ms. Afaq's deposition. The Court declines to place any other restrictions on Ms. Afaq's deposition. To be clear, the Court is not imposing any restriction on questions to Ms. Afaq concerning her father's marriages, divorce(s), and/or remarriage(s), or concerning who has lived in the home where Malik has resided at times relevant to this case.

**IT IS FURTHER ORDERED THAT** each party shall bears its own costs related to this motion.

IT IS SO ORDERED.

Dated this 1st day of June 2016, at Kansas City, Kansas.


*s/ Teresa J. James*
Teresa J. James
U. S. Magistrate Judge