IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,              )
                                        )
                         Plaintiff,     )
                                        )
v.                                      )          Case No. 15-cv-9092-CM-TJJ
                                        )
AFAQ AHMED MALIK,                       )
                                        )
                         Defendant.     )

## MEMORANDUM AND ORDER

This is a denaturalization case brought by Plaintiff United States of America ("the Government") against naturalized citizen Defendant Afaq Malik ("Malik"). This matter is pending before the Court on Malik's Motion to Compel Discovery Responses (ECF No. 26). Malik requests an order under Fed. R. Civ. P. 37 compelling the Government to produce two documents, a Statement of Findings and a Fraud Referral Sheet, created during its investigation of whether to institute denaturalization proceedings against Malik, and an unredacted version of Malik's I-485 application Processing Sheet. The Government opposes the motion, arguing that the documents sought by Malik are not relevant and are also protected from disclosure under the deliberative process privilege or law enforcement privilege.  As explained below, the Court finds that the documents are protected from disclosure under the deliberative process privilege and the redactions under the law enforcement privilege, and Malik has not made a sufficient showing of need for the documents and redacted information to overcome the privileges.  The motion is denied.

I.        **FACTUAL AND PROCEDURAL BACKGROUND**

On November 21, 2000, Malik filed his I-485 application seeking to become a lawful permanent resident based upon his marriage to Venita McIntosh ("McIntosh"), a United States citizen, on October 23, 2000. Malik filed his Application for Naturalization on April 5, 2004. His application was approved, and he became a naturalized United States citizen on January 15, 2009.

The Government filed its Complaint to Revoke Naturalization (ECF No. 1) of Malik on May 28, 2015.[1]  In this action, the Government contends Malik obtained lawful permanent resident status and eventually was naturalized based on his claimed marriage to McIntosh.  That marriage, however, the Government claims was bigamous and invalid because Malik secretly remained married to his first wife, Kaneez Fatima ("Fatima"), a citizen and  national of Pakistan. Therefore, according to the Government, Malik's claimed relationship with his United  States citizen spouse did not lawfully confer any immigration status and Malik was not *lawfully* admitted for permanent residence or statutorily eligible to naturalize.

In addition, the Government alleges that Malik concealed the  existence of his first wife, Fatima, and their two children.  The Government further contends that Malik willfully misrepresented these material facts during the legal permanent residency  application process, and therefore Malik was not eligible for admission as a United States citizen.  Finally, the Government alleges Malik lacked the required good moral character to become a naturalized

---

[1] The Government filed its First Amended Complaint to Revoke Naturalization (ECF No. 56) on May 25, 2016.

citizen because he committed bigamy and practiced polygamy when he allegedly remarried his first wife while still married to his U.S.-citizen spouse.[2]

During the course of discovery in this case, the Government produced immigration records and related documents that it claims support the allegations in the Complaint. On January 8, 2016, the Government served its Response to Malik's First Interrogatories and Requests for Production of Documents and ESI,[3] and produced a PDF version of Malik's Alien File (with some redactions), and a two-page privilege log. In a letter dated January 11, 2016, Malik informed the Government that he believed many of the Government's discovery responses were inadequate and asked the Government to supplement and clarify its responses.

After correspondence and discussions of counsel, the Government eliminated and reduced some redactions of the documents produced and provided an updated privilege log. However, the Government continued to object to production of the following two documents: (1) May 16, 2013 Statement of Findings, consisting of nine pages ("the Statement of Findings"); (2) May 2, 2013 Fraud Referral Sheet, consisting of three pages ("the Fraud Referral Sheet"). The Government also objected to producing an unredacted version of the one-page I-485 Processing Sheet. The Government argued that that these documents were not relevant or were of such marginal relevance to this case that the harm of disclosure would outweigh any potential relevance.  The Government also asserted the deliberative process privilege as to the Statement of Findings and the Fraud Referral Sheet, and claimed that its redactions to the I-485 Processing Sheet were protected by the law enforcement privilege.

---

[2] The relevant facts set out in the preceding paragraphs are taken from the Preliminary Statement section of the Government's Complaint to Revoke Naturalization (ECF No. 1) and First Amended Complaint to Revoke Naturalization (ECF No. 56).

[3] *See* Cert. of Service (ECF No. 25).

Malik filed his Motion on February 10, 2016, requesting an order compelling the Government to produce the Statement of Findings and Fraud Referral Sheet, and an unredacted version of the I-485 Processing Sheet.  On May 23, 2016, the Court ordered the Government to submit unredacted copies of the three documents for *in camera* review.[4]

## II.   THE GOVERNMENT'S OBJECTIONS TO PRODUCING THE STATEMENT OF FINDINGS AND THE FRAUD REFERAL SHEET

### A.   Deliberative Process Privilege

The Government has asserted the deliberative process privilege as a basis for withholding the Statement of Findings and Fraud Referral Sheet.  It claims these documents relate to the process used by United States Citizenship and Immigration Services ("USCIS") to determine whether to bring this denaturalization action against Malik for fraud, prior to the consummation of that decision.  It also claims that the authors of the documents are not the final decision makers, but are part of the agency's deliberative process in making its final decision to institute denaturalization proceedings. As such, the Government contends these pre-decisional and deliberative documents qualify for protection from disclosure under the deliberative process privilege.  The Government has provided a privilege log asserting the privilege with respect to these two documents.  It further argues that Malik has not shown that any waiver or exception to the privilege applies.

Malik argues the Court should reject the Government's attempt to invoke the deliberative process privilege to shield the Statement of Findings and Fraud Referral Sheet from production because the Government has not met its burden to prove the privilege applies, has not properly invoked the privilege, and has waived the privilege by placing at issue its own knowledge of the

---

[4] *See* Order Regarding In Camera Review (ECF No. 53). The Government submitted the documents on May 23, 2016.

facts.  Malik further argues that even if the qualified privilege applies, the Court should find that Malik has demonstrated a need for the documents.

The deliberative process privilege[5] permits the Government to withhold documents that "reflect[ ] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."[6]  The rationale for the privilege is that it will "enhance the quality of agency decisions by protecting open and frank discussion" among those who make decisions within the Government, which is based upon the belief that "officials will not communicate candidly among themselves if each [internal] remark is a potential item of discovery and front page news."[7]  The party seeking to invoke the deliberative process privilege bears the burden of proving that the documents at issue are both pre-decisional and deliberative.[8]

A document is pre-decisional if it is "prepared in order to assist an agency decisionmaker in arriving at his decision."[9]  In *Casad*, the Tenth Circuit cited two factors that are "helpful" in

---

[5] The deliberative process privilege most often arises in Freedom of Information Act ("FOIA") cases, where a statutory exemption prevents disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Exemption 5" has been interpreted to shield documents that would be covered by any privilege that any agency could assert in a civil proceeding. *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007). Such privileges "include the privilege for attorney work-product and what is sometimes called the 'deliberative process' privilege." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

[6] *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (recognizing an executive privilege for "confidential intra-agency advisory opinions," disclosure of which would be "injurious to the consultative functions of government") (quoting *Kaiser Aluminum & Chem. Corp. v. United States*, 157 F. Supp. 939, 946 (Ct. Cl. 1958)).

[7] *Casad v. U.S. Dep't of Health & Human Servs.*, 301 F.3d 1247, 1251 (10th Cir. 2002) (quoting *Klamath*, 532 U.S. at 8–9).

[8] *Trentadue*, 501 F.3d at 1227.

[9] *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975) ( In determining the scope of the exemption, courts distinguish "between pre-decisional memoranda prepared in order to

determining whether a document is pre-decisional: (1) "the 'nature of the decisionmaking authority vested in the officer or person issuing the disputed document;' " and (2) "the relative positions in the agency's 'chain of command' occupied by the document's author and recipient."[10]

A pre-decisional document also has to be "deliberative," meaning it is a part of the agency's deliberative process. A document is considered a part of the deliberative process if it relates to government decision-making and its disclosure to the public "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."[11] A document is deliberative if it is "a part of the agency give-and-take—of the deliberative process—by which the decision itself is made."[12]

While non-factual materials that express opinions or recommendations are clearly protected under the deliberative process privilege,[13] "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context" is not protected unless it is "inextricably intertwined with policy-making processes" or its disclosure itself would expose the agency's deliberative process.[14] The court

---

assist an agency decision-maker in arriving at his decision, which are exempt from disclosure, and post decisional memoranda setting forth the reasons for an agency decision already made, which are not.").

[10] *Casad*, 301 F.3d at 1252.

[11] *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987).

[12] *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898-99 (D.C. Cir. 2015) (agency's assessment to refer, which recommended whether to grant alien's request for asylum, was protected by the deliberative process privilege).

[13] *Trentadue*, 501 F.3d at 1227 (citing *N.L.R.B.*, 421 U.S. at 150).

[14] *Id.*

should apply a "flexible, commonsense approach" to the factual versus deliberative classifications.[15]

### 1.    The Statement of Findings

In support of its assertion of the deliberative process privilege as a basis for withholding the Statement of Findings, the Government has submitted the Declaration of David Douglas ("Douglas"), who is the Director of USCIS for District 15.  In his Declaration, Douglas states that the nine-page Statement of Findings is an internal document prepared by the Fraud Detection and National Security Directorate ("FDNS") at the request of, and to assist, a USCIS decision maker in making an overall adjudication of Malik's immigrant petitions and determination of the issue of submission for denaturalization litigation.[16]  According to Douglas, the Statement of Findings was prepared as part of the FDNS officer's recommendation for submission for denaturalization litigation.  In preparing the Statement of Findings, the FDNS investigator compiled information to pass along to others to make an informed decision regarding suspected fraud matters, any record of suspected fraud, or any other grounds of inadmissibility or removability.  The FDNS investigator who prepares the Statement of Findings is not the final agency decision maker for suspected fraud matters, but submits the information to the Department of Homeland Security ("DHS") legal counsel, who is not bound by the FDNS Statement of Findings.  If a case is ultimately referred for litigation such as denaturalization proceedings, the reasons for the agency's action will be articulated in the complaint and affidavit filed in the denaturalization litigation.

---

[15] *Id.*

[16] Douglas Decl., ECF No. 31-1.

Malik argues that the Statement of Findings is not deliberative and that this is shown by the Government's own privilege log, which indicates that the document was not actually addressed to anyone.[17]  He asserts this lack of an addressee shows that it is not the type of document created by a decision maker in deciding whether to bring this lawsuit and does not reflect the type of "back and forth" that the privilege is designed to protect.  In response, the Government argues that the lack of a specific-named addressee does not render the documents non-deliberative because the Statement of Findings is used for various potential agency decisions, particularly in fraud investigations. The Court disagrees with Malik on this point. The lack of any named "addressee" in the Government's privilege log does not render the document non-deliberative.  Rather, the Court focuses on the purpose of the document and whether it was created as part of the agency's decision-making process.  Here, the Government has sufficiently shown the Statement of Findings contains opinions, deliberations, and recommendations prepared for the purpose of deciding whether to forward Malik's case for denaturalization litigation.

Malik argues that even if the Statement of Findings contains low-level employees' opinions about whether to bring a denaturalization lawsuit in addition to reciting the facts, the Tenth Circuit *Trentadue* decision dictates that the appropriate action would be to redact the opinion portions and produce the factual summary.  The Court agrees with Malik that to the extent the Statement of Findings consists only of compiled factual material or purely factual material severable from its context, that information is not protected by the deliberative process

---

[17] The privilege log entries for the Statement of Findings and Fraud Referral Sheet list "none" in the addressee column. ECF No. 27-5.

privilege.[18]  Here, however, the Court concludes that the Government has shown the factual

information included in the Statement of Findings should be exempted as its disclosure is

inextricably intertwined with deliberative opinions and recommendations and would reveal part

of the agency's deliberative process. Statements in the Douglas Affidavit submitted by the

Government convince the Court that the factual information that was specifically selected for

inclusion by the FDNS investigator reflects the investigator's impressions and evaluations of the

underlying facts, was assembled in the exercise of the investigator's judgment, and serves as the

basis for his recommendation to DHS legal counsel.  The factual information included in the

Statement of Findings is thus inextricably intertwined with deliberative materials and will reveal

the mental processes of the agency decision makers.  The Court's *in camera* review of the

Statement of Findings further supports the Court's conclusion that the factual information

included should be protected from disclosure under the deliberative process privilege.  The Court

finds the factual information is intertwined with and not severable from the investigator's mental

impressions, evaluations, and conclusions.

   In further support of its position that even the purely factual material within the Statement

of Findings is selective and deliberate and therefore should be protected by the deliberative

process privilege, the Government cites to the 2013 Southern District of New York case *Assadi

v. U.S. Citizenship and Immigration Services*.[19] In that case, the court found "Summary of

Findings" reports created in conjunction with an investigation of a suspected fraudulent

---

[18] *See Trentadue*, 501 F.3d at 1227 (compiled factual material or purely factual material is not
protected by the deliberative process privilege).

[19] *Assadi v. U.S. Citizenship & Immigration Servs.*, No. 12 CIV. 1374 RLE, 2013 WL 230126, at
*3 (S.D.N.Y. Jan. 22, 2013).

immigration benefits application were protected by the deliberative process privilege.[20] The *Assadi* court found the investigatory agency, the FDNS, did not have decision-making authority to determine whether to award immigration benefits.[21] The court further found the FDNS reports contained deliberations and findings associated with the fraud investigation that may include professional opinions, and the sole purpose of the reports was to determine whether fraud existed and to recommend a course of action.[22] After *in camera* review, the *Assadi* court concluded the reports were "predominantly evaluative" and disclosure of the purely factual material "would reveal the deliberative process of summarization itself by demonstrating which facts" in the fraud investigation process "were considered significant by the decision maker and those assisting her."[23] Finding all facts within a report were selective and deliberate, and disclosure would shed light on an otherwise exempt evaluation process, the *Assadi* court found that the factual information was not segregable because it is "inextricably intertwined" with the overall CIS adjudicative process.[24]

In addition to the *Assadi* case, other courts have found USCIS reports containing the non-final-decision-making author's thoughts or impressions on agency action qualify for the deliberative process privilege.[25] In *Abtew*, the court—in finding the assessment prepared by the

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at *5 (quoting *Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 85 (2d Cir. 1979)).

[24] *Id.*

[25] *See Isiwele v. U.S. Dep't of Health & Human Servs.*, 85 F. Supp. 3d 337, 357–58 (D.D.C. 2015) (handwritten notes of a USCIS adjudicator from an immigration worksheet were properly redacted as deliberative process material because the notes were pre-decisional and revealed the adjudicator's impressions and recommendations to a supervisor regarding agency action on a form application for

USCIS asylum officer who conducted the initial review of the plaintiff's asylum petition was

protected under the deliberative process privilege— noted that the assessment predated the

USCIS's decision to deny asylum to the plaintiff, formed the basis for that decision, and instead

referred the matter to an immigration judge for removal proceedings.[26] The court relied upon a

declaration from the government which explained that the assessment was written "in narrative

form, and explains the officer's concerns, discuss[es] possible legal insufficiencies in the

application, and the reasons for the decision to refer the case to the immigration court."[27] The

*Abtew* court concluded that the assessment was thus an "essential part of the USCIS deliberative

process" that led to the ultimate determination to deny the application for asylum and to instead

refer the out-of-status applicant for removal proceedings.[28]  In *Abtew*, the declaration verified

that the asylum officer wrote the assessment before a final decision was made; the assessment

included the asylum officer's personal thoughts about the merits of the asylum case; and it was

an essential tool in making that decision.

The Court finds that the Statement of Findings is an internal agency document that was

prepared prior to the final decision on whether to institute denaturalization litigation against

Malik.  It was compiled by the FDNS investigator, who was not the final decision maker, for the

purpose of assisting DHS legal counsel and USCIS in arriving at the decision whether to institute

denaturalization proceedings against Malik.  The Court concludes the Government has

---

immigration benefits); *Abtew v. U.S. Dep't of Homeland Sec.*, 47 F. Supp. 3d 98, 105 (D.D.C. 2014),
*aff'd*, 808 F.3d 895 (D.C. Cir. 2015) (USCIS appropriately withheld internal assessment to refer
completed in connection with asylum petition under the deliberate process privilege); *Abramyan v. U.S.
Dep't of Homeland Sec.*, 6 F. Supp. 3d 57, 65 (D.D.C. 2013) (same).

[26] *Abtew,* 47 F. Supp. 3d at 105.

[27] *Id.*

[28] *Id.*

established that the Statement of Findings is a pre-decisional document for purposes of the deliberative process privilege.

The Government has also shown the Statement of Findings was part of the USCIS's deliberative process whether to institute denaturalization proceedings against Malik.  The Statement of Findings prepared by the FDNS is submitted to the DHS legal counsel as part of the FDNS officer's recommendation for submission for denaturalization litigation. The Government has shown that release of this information would likely undermine a key tool in preventing and addressing immigration fraud, including marriage fraud.  Fear of public disclosure of the Statement of Findings could have a chilling effect on the amount and type of information that FDNS initially includes in its reports to USCIS decision makers.

Like the agency documents at issue in *Assadi* and *Abtew,* the Statement of Findings at issue here is predominantly an evaluative document, including the FDNS investigator's opinions and recommendations to DHS legal. The Government has met its burden to show the Statement of Findings in its entirety is pre-decisional and part of USCIS's deliberative process for determining whether to institute denaturalization proceedings against Malik. As in *Assadi*, the factual information in the Statement of Findings is inextricably intertwined with the deliberative or adjudicative process.  The Court's thorough *in camera* review of the Statement of Findings further informs the Court's ruling and leaves the Court with no doubt that the Statement of Findings should be and is protected in its entirety by the deliberative process privilege.

### 2.      The Fraud Referral Sheet

The Government also invokes the deliberate process privilege to preclude production of the Fraud Referral Sheet.  It claims that, like the Statement of Findings, the Fraud Referral Sheet is a deliberative, pre-decisional document addressing potential fraud, created for the purpose of

investigating whether to bring this denaturalization action.  According to the Government, the Fraud Referral Sheet documents the impressions of a USCIS adjudicator communicating a request for the FDNS to institute an administrative investigation to assist USCIS adjudicators in making decisions on immigration applications.  The Fraud Referral Sheet must provide enough information for FDNS investigators to make an informed decision regarding commencement of investigation of suspected fraud matters, and include any record of suspected fraud or any other grounds of inadmissibility or removability that have been identified by the adjudicator.

The Court finds that the Government has met its burden to show the Fraud Referral Sheet was pre-decisional; it was prepared to instigate the administrative investigation of possible fraud and to assist an agency decision-maker in determining whether to institute the instant denaturalization proceedings against Malik.  Director Douglas explains in his Declaration that the Fraud Referral Sheet documents the impressions of a USCIS adjudicator communicating a request for the FDNS to institute an administrative investigation to assist USCIS adjudicators in making important decisions on immigration applications. It was compiled prior to any final decision concerning the appropriateness of denaturalization litigation and, as such, was pre-decisional.

In addition to being a pre-decisional document, the Government must also show that the Fraud Referral Sheet is deliberative.  The Government asserts that the Fraud Referral Sheet is deliberative because it contains the views of a particular adjudicator in a dialogue with FDNS investigators on which cases should be pursued for investigation of suspected fraud. This dialogue must be protected to preserve candor in the communication of adjudicators with FDNS officials.  The Court agrees that the Government has established that the Fraud Referral Sheet is

part of the agency's deliberative process for determining whether to institute denaturalization proceedings against Malik.

The Government further argues that the factual information included in the Fraud Referral Sheet is also protected because it is information that the adjudicator deemed important for FDNS consideration during the investigation process. Thus, disclosing or attempting to sever that material would itself demonstrate the process by which fraud is investigated, prioritized, and targeted for enforcement. Release of this document would inhibit the ability of USCIS, and chill the ability of immigration adjudicators and FDNS investigators to provide information required to make an informed decision on potential future actions, such as fraud investigation or enforcement. Fear of public disclosure of the materials set forth in these discussions would limit the amount and type of information included by USCIS adjudicators.

Like the Statement of Findings, the Court concludes that the Government has shown the factual information included in the Fraud Referral Sheet should be exempted as its disclosure is inextricably intertwined with deliberative materials and would reveal part of USCIS's deliberative process. The Court's *in camera* review of the Fraud Referral Sheet confirms that the factual information included is intertwined with and not severable from the investigator's mental impressions, evaluations, and opinions. Moreover, allowing the disclosure of factual information would reveal what information the investigator decided was significant enough for inclusion in the Fraud Referral Sheet and upon which the investigator relied in making any recommendations to pursue a case for suspected fraud.

### 3.     Waiver of the Privilege

Malik argues that even if the deliberative process privilege applies to the Statement of Findings and Fraud Referral Sheet, the Government has waived the privilege by bringing the

instant lawsuit alleging, in essence, that the Government was not aware Malik had previously been married in Pakistan and placing the state of the Government's knowledge at issue. Malik argues that the Government's state of mind is at issue because the Complaint alleges the facts omitted on Malik's forms would have influenced the adjudicator's decision and thus were "material."  Malik further argues that the Government's knowledge of his first marriage is critical, because the Government must prove by clear, convincing, and unequivocal evidence that the information omitted about his first marriage and divorce in Pakistan would have affected the adjudicator's decision, in that it would have led to a different result if the Government had been aware of it. Malik's theory is that if the Government would have reached the same result had it known about Malik's prior marriage and divorce, then the Government cannot meet its burden at trial.

Malik argues multiple courts have held that the Government waives the deliberative process privilege by placing its own knowledge at issue.  He cites to two district court cases from other districts finding the Government waived the deliberative process privilege by asserting claims against a defendant who raised issues about the Government's knowledge.[29]  Malik further argues that another court has similarly rejected claims of privilege when the Government initiated a lawsuit which sought affirmative relief. In *EEOC v. Citizens Bank & Trust Co.*, the court held it was "fundamentally unfair" to permit the Government to seek affirmative relief as plaintiff but also "evade discovery of materials that a private plaintiff would have to turn over."[30]

The Government argues there is no such automatic waiver in this case, noting that the rationale behind the deliberative process privilege is no less important or valid for federal

---

[29] *Brock v. Weiser*, No. 86 C 2129, 1987 WL 12686, at *2 (N.D. Ill. June 15, 1987); *United States v. Gates*, 35 F.R.D. 524, 529 (D. Colo. 1964).

[30] *E.E.O.C. v. Citizens Bank & Trust Co.,* 117 F.R.D. 366, 366 (D. Md. 1987).

agencies with enforcement authority that frequently litigate as plaintiffs.  The Government

maintains Malik must still articulate a valid need for the documents necessary to overcome the

privilege.  While acknowledging the existence of conflicting authority on whether there is an

automatic waiver, the Government posits that a better reading of the law is that the privilege is

not waived by its bringing an action affirmatively. Instead, the Government suggests that the

Court should reject automatic waiver and employ the five-factor test for determining whether the

privilege can be overcome by a showing of sufficient need.

 After reviewing the applicable case law regarding waiver, the Court is not persuaded by

Malik's argument or the cases finding an automatic waiver of the deliberative process privilege

when the Government is the plaintiff or the Government's decision-making process itself is at

issue.  As noted by the District of Colorado case, *Securities and Exchange Commission v.*

*Nacchio*, there is a lack of unanimity among courts that have addressed the waiver issue.[31] The

Court believes the better view is expressed by *Nacchio* and a number of other cases that have

found Government agencies do not automatically waive the deliberative process privilege by

filing or initiating lawsuits.[32] Accordingly, the Court holds that the Government has not waived

the deliberative process privilege simply by filing this denaturalization action against Malik. The

Government's means of exercising its enforcement authority is to bring a civil action. As such,

---

[31] *S.E.C. v. Nacchio*, No. 05-CV-00480-MSK-CBS, 2009 WL 211511, at *5 (D. Colo. Jan. 29, 2009), *aff'd*, 704 F. Supp. 2d 1099 (D. Colo. 2010).

[32] *See, e.g., Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1580 (Fed. Cir. 1985) (the government does not automatically waive the privilege that "protects agency officials' deliberations, advisory opinions and recommendations" simply by bringing suit); *Export–Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 110 (S.D.N.Y. 2005) (rejecting defendant's argument that the deliberative process privilege is not available to the government when the government is the plaintiff); *In re Consol. Litig. Concerning Int'l Harvester's Disposition of Wisconsin Steel*, No. 81 C 7076, 1987 WL 20408, at *7 (N.D. Ill. Nov. 20, 1987) (describing as the "better view" that an agency does not automatically waive the deliberative process privilege by filing suit).  *Cf. Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 633–35 (D. Kan. 2000) (rejecting "automatic waiver" of attorney-client privilege when a party places the protected information "at issue").

the Government has demonstrated it is entitled to the protection of the deliberative process privilege, which is intended to enhance the quality of agency decisions by promoting open and frank discussion among those who make decisions within the Government. Having determined that the Government has not waived the deliberative process privilege, the Court turns next to whether Malik can make a sufficient showing of need to overcome the privilege for these documents.

### 4.      Showing of Need to Overcome the Qualified Privilege

The deliberative process privilege is a qualified privilege and can be overcome if the party seeking discovery shows sufficient need for the otherwise privileged material, with the court required to balance the litigant's need for the disclosure against the Government's need for secrecy.[33]  Courts typically consider the following five factors when assessing whether a plaintiff's need outweighs the harm to the Government of disclosure:

> 1) the relevance of the evidence sought to be protected; 2) the availability of other evidence; 3) the "seriousness" of the litigation and the issues involved; 4) the role of the government in the litigation; and 5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.[34]

Malik argues that even if the Court finds the privilege applies, the Government should be ordered to produce the two documents at issue because he has shown a compelling need for the documents to defend himself in this denaturalization suit.  Malik addresses the five factors noted above as follows: (1) the two documents are plainly relevant, as they recite at length what the Government knew to be the case or thought to be the case about Mr. Malik's first marriage and

---

[33] *Hinsdale v. City of Liberal, Kan.*, No. 96-1249-FGT, 1997 WL 557314, at *1 (D. Kan. Aug. 27, 1997).

[34] *In re Sealed Case*, 121 F.3d 729, 737–38 (D.C. Cir. 1997); *Cobell v. Norton*, 213 F.R.D. 1, 5 (D.D.C. 2003); *Dairyland Power Coop. v. United States*, 77 Fed. Cl. 330, 338 (2007); *Gambina v. Fed. Bureau of Prisons*, No. 10-CV-02376-MSK-KLM, 2012 WL 4040335, at *3 (D. Colo. Sept. 12, 2012).

divorce; (2) these documents are not available anywhere else, as they are in the sole custody of the Government; (3) the litigation is incredibly serious, as it risks stripping Malik of his citizenship and could lead to his deportation; (4) the Government clearly has a role as the Plaintiff in this litigation; and (5) revealing the disclosure is not likely to hinder or discourage frank and independent discussions, because there is a presumption of regularity. Malik adds as further support of his need for these documents that the issue at stake is not whether someone advocated bringing this suit. Rather, the relevant information is the state of the Government's knowledge at specific times and what it would have done with the information it says Malik withheld, yet the sole evidence on this subject is being withheld pursuant to a privilege designed only to protect opinions, not facts.

After careful consideration, the Court finds that Malik's need for the two documents is outweighed by the harm likely to result from their disclosure.  The Court agrees with Malik regarding the first, third, and fourth factors.  Clearly the two documents are relevant to the issues in this case. This denaturalization litigation is serious, and the Government's significant role in this case is obvious.

However, the second and fifth factors weigh heavily against disclosure.  As the Government points out, Malik can obtain the factual information contained within the documents by other means. The Court has recently extended the discovery deadline. Malik can depose witnesses, including organizational and Government witnesses; propound additional interrogatories; request additional production of documents; and review the pleadings and discovery provided. Malik fails to rebut this argument. His contention that these documents are not available from any other source misses the point. The question is whether "other evidence" is available from which Malik can discover the factual information he seeks. Moreover, allowing

18

disclosure of these internal agency decision-making documents would likely have a chilling effect on agency employees, and would likely slow down operations, undermine fraud prevention efforts, and decrease accuracy.

The Court finds that the risk of harm to the Government from disclosure is significant because of the resulting "possibility of future timidity by government employees who [would] be forced to recognize their secrets are violable."[35] Again, Malik fails to address this factor in any compelling way, stating only that disclosure is not likely to discourage frank discussion because there is a "presumption of regularity." Malik offers no explanation for this assertion, and his conclusory statement regarding this very important factor is unpersuasive.

Additionally, the Government indicates that the Statement of Findings and Fraud Referral Sheet were used for internal agency decision-making and will not be used as evidence against Malik. Documents such as these are key tools in USCIS's priority activities of preventing and addressing immigration fraud. The Government's interest in preventing the disclosure of these confidential intra-agency documents outweighs Malik's need for the documents.

## III.   THE GOVERNMENT'S OBJECTIONS TO PRODUCING AN UNREDACTED I-485 PROCESSING SHEET

The Government contends that the information it redacted from the one-page I-485 Processing Sheet—which it describes as the results of the FBI's database name check for Malik—is protected from disclosure under the law enforcement privilege. It argues that the redactions are proper because disclosure of this information would undermine the agency's ability to conduct law enforcement operations and would reveal its methods. It attaches the Declaration of Kevin Donovan, who is the Section Chief of the FBI's National Name Check

---

[35] *Cobell*, 213 F.R.D at 5.

Program Section.  Mr. Donovan states that the FBI does not publicly disclose name check results or any underlying or indices search results because to do so could alert a litigant or other individuals to the existence of pending investigations and thus potentially compromise those investigations, confidential sources, and investigative techniques.

Malik argues that the Court should reject the Government's claim of privilege on the redacted portions of the I-485 Processing Sheet. He claims that the Government has not identified with particularity what information is being redacted under the law enforcement privilege and why it falls within the scope of the privilege. He also argues the privilege does not apply to the redacted information because the Government has already revealed the name of the officer who conducted the interview and wrote the notes on the sheet.

The law enforcement investigative privilege is "based primarily on the harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files."[36] Its purpose is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation."[37] To assert the privilege, "the responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege."[38] "The party claiming the privilege has the burden of establishing these

---

[36] *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (quoting *Black v. Sheraton Corp. of Am.*, 564 F.2d 531, 541 (D.C. Cir. 1977)).

[37] *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. F.D.I.C.*, No. 93-2471-GTV, 1995 WL 104835, at *1 (D. Kan. Mar. 7, 1995) (quoting *In re Dep't of Investigation of City of New York*, 856 F.2d 481, 484 (2d Cir. 1988)).

[38] *Winner*, 641 F.2d at 831.

elements."[39]  The law enforcement privilege is a qualified privilege, and thus can be overcome if the party seeking the information establishes "a compelling need for the information that outweighs the need for confidentiality."[40]

The Court has reviewed an unredacted copy of the I-485 Processing Sheet as part of its *in camera* review and notes that only a narrow section across the middle of the document, which contains little information, has been redacted.  The Government has explained that the information it redacted from the I-485 Processing Sheet are the results of the FBI's database name check for Malik.  It has further explained the negative impact on law enforcement activities that would result from disclosure of this information. Based upon the statements made in the Donovan Declaration submitted by the Government, the Court concludes that the Government has established all elements for asserting the law enforcement privilege for the redacted material. Finally, Malik has not shown a compelling need for the redacted name check results information that outweighs the need for confidentiality of this information to overcome the privilege. Malik's motion to compel an unredacted version of the I-485 Processing Sheet is therefore denied.

**IT IS THEREFORE ORDERED THAT** Defendant Afaq Malik's Motion to Compel Discovery Responses (ECF No.  26) is denied.

**IT IS FURTHER ORDERED THAT** each party shall bear its own costs related to this motion.

---

[39] *Nat'l Union Fire*, 1995 WL 104835, at *1.

[40] *Id.* at *4 (citing *In re United Telecomms., Inc. Sec. Litig.*, 799 F. Supp. 1206, 1208 (D.D.C. 1992)).

**IT IS SO ORDERED.**

Dated this 7th day of June, 2016, at Kansas City, Kansas.


 *s/ Teresa J. James*
Teresa J. James
U. S. Magistrate Judge