IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-9092-CM-TJJ |
| | ) | |
| AFAQ AHMED MALIK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is a denaturalization case brought by Plaintiff United States of America ("the Government") against naturalized citizen Defendant Afaq Malik ("Malik"). This matter is pending before the Court on Malik's Motion for Sanctions for Plaintiff's Willful Tampering with a Material Witness (ECF No. 71).  Malik requests an order sanctioning the Government for its counsel's alleged misconduct with respect to two witnesses. The Government opposes the motion, arguing that Malik's accusations are supported only by mischaracterization of the evidence, selective snapshots of evidence, and inaccurate statements of the law. As explained below, the Court denies the motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On November 21, 2000, Malik filed his I-485 application seeking to become a lawful permanent resident based upon his October 23, 2000 marriage to Venita McIntosh ("McIntosh"), a United States citizen. Malik filed his N-400 Application for Naturalization on April 5, 2004. On July 15, 2004, USCIS officer Carolyn Jacobs ("Jacobs") conducted Malik's naturalization interview. His application was approved, and he became a naturalized United States citizen on January 15, 2009.

The Government filed its Complaint to revoke Malik's naturalization (ECF No. 1) on May 28, 2015.[1] The Government served its initial Rule 26 disclosures on November 25, 2016.[2] It listed Jacobs as an individual likely to have information regarding the factual allegations made in the Complaint, as well as Malik's qualifications for naturalization as a United States citizen, and stated that Jacobs "can be contacted through the undersigned counsel for Plaintiff."[3] The Government's initial disclosures also listed Malik's former wife, McIntosh, as likely to have information regarding the factual allegations in the Complaint.

### A.     Witness Jacobs

On December 9, 2015, Malik's counsel sent an email to counsel for the Government, Dillon Fishman ("Fishman") inquiring whether Jacobs and two other officers were located in the Kansas City area as "[t]hat would affect the order of the depositions [he] would plan to take."[4] On February 10, 2016, Malik's counsel again emailed Fishman, stating that he needed to depose Jacobs and asking for her contact information.[5]

Fishman contacted Jacobs by telephone on April 4, 2016 and April 13, 2016. Fishman provided Jacobs' contact information to Malik's counsel on April 14, 2016, and confirmed that Fishman did not represent Jacobs, who had been retired ten years.

On April 22, 2016, Fishman was in Kansas City, Kansas for the McIntosh deposition. He arranged to meet with Jacobs after the deposition and before his flight back to Washington, DC.

---

[1] The Government filed its First Amended Complaint to Revoke Naturalization on May 25, 2016, ECF No. 56.

[2] *See* Certificate of Service, ECF No. 22.

[3] The Government's Initial Disclosures, ECF No. 93-2.

[4] Dec. 9, 2015 Email, ECF No. 93-3.

[5] Feb. 10, 2016 Email, ECF No. 93-5.

Fishman met Jacobs in the lobby of the Kansas City Airport Marriott for approximately two hours. During the meeting, Jacobs reviewed Malik's N-400 application and answered questions. Fishman typed notes into his laptop computer as Jacobs answered questions.

On April 25, 2016, Fishman drafted an eight-page declaration and emailed the password-protected Word document to Jacobs. On April 27, 2016, Jacobs made changes to the declaration and signed it in front of a notary (the "Jacobs Declaration"). She changed her description of the words she used to administer the oath, added the documents she asked for, and added that attorneys could be present during naturalization interviews.

On May 3, 2016, Malik issued a subpoena to Jacobs, setting her deposition for May 11, 2016.  The Government decided to issue a subpoena to Jacobs as well, and Fishman called Jacobs to confirm her availability for the deposition. During her deposition, Jacobs testified that she did not have any specific memory of the naturalization interview she conducted of Malik on July 15, 2004. Jacobs also testified that the only time she went over Malik's N-400 application with Fishman was when she met with Fishman on April 22, 2016. Jacobs testified that Fishman asked her questions, told her it was a denaturalization case, and a fraud case.  She explained that she understood Fishman's statement it was a "fraud case" to mean that Malik had lied on his application in order to gain his permanent residence.

Three hours after her deposition concluded on May 11, 2016, Jacobs sent Fishman the following email message:

> I want to apologize if I messed up royally today. I sincerely hope I have not ruined all chances for rescinding Mr. Malik's Naturalization.
>
> I was extremely uncomfortable in that I felt like I was being badgered by the opposing attorney and that "I" was the one on trial. Perhaps I could have been better prepped for it. He kept going over and over the same questions and skipping back and forth in all of his exhibits in his best attempt to trip me up. I

answered all questions truthfully to the best of my recollection. This meeting felt more like an inquisition than a deposition.[6]

### B.    Witness McIntosh

McIntosh was first deposed on April 22, 2016. At that deposition, she was represented by her own counsel. On or about May 2, 2016, McIntosh received a copy of her deposition transcript with a letter advising that she had 30 days to make any corrections on the errata sheet.[7]

After her deposition, McIntosh made multiple phone calls and sent two letters to Malik in mid-May 2016 ("the McIntosh letters"). In one of the letters, McIntosh stated:

> I am trying to talk to you but you said you do not want to be bother[ed]. These papers cam[e]. I am going to make changes. I talk[ed] to a lawyer and [know] what to say. I will be trouble to you.  Good luck Sneeky. Going to Pakistan you hometown. I am making changes they will be [made] the 2nd of June. I have copies of this.[8]

In the other letter, McIntosh stated in part:

> Since you will [not] answer my phone calls [or] talk to me, you don't have nothing to do with me, I have the other choice to fill the papers.
>
> On the transcript on page 1 if there any changes make them and send them back. I have a lawyer I am going to tell I lied and I want to change those statements.
> . . .
> I'm going to tell how I lied and will not be in trouble. You and your family [are] on you[r] way home. Pakistan, here you come.[9]

On May 12, 2016, McIntosh left Malik four voicemail messages. In one of them, she

stated:

---

[6] May 11, 2016 Email, ECF No. 72-1.

[7] McIntosh Second Dep. 43:10–44:17, ECF No. 96-2; Court reporter letter 5, ECF No. 72-8.

[8] McIntosh letters 3, ECF No. 72-8.

[9] *Id.* at 12–14.

[T]hese papers that I got back from these court reporting people, they asked me did I want to make any changes on these documents, which I'm getting ready to. But I'm making changes on em. I'm gonna tell them that I lied on a lot of that stuff because I already talked to an attorney. I will be out of trouble. But the way I'm gonna fix these papers, you're bound to go back to Pakistan.[10]

On May 24, 2016, Malik's counsel emailed copies of the two McIntosh letters to Fishman.[11] Malik does not indicate that the voice mail log of McIntosh's calls to him was emailed to Fishman.

On May 31, 2016, McIntosh called Fishman and told him she was calling to correct her deposition testimony.[12] After inquiring and confirming that McIntosh was no longer represented by counsel, Fishman (along with a colleague, Kathleen Connolly, listening on speakerphone) called McIntosh back on June 2, 2016.  McIntosh stated she called Fishman to correct what she had said during her deposition.[13] She also stated during the call that Malik had "bribed" and "threatened" her so that she would say what he wanted her to say at her deposition.[14] McIntosh began reading through her deposition transcript, partly to herself and partly out loud.[15] She then would stop reading and tell Fishman when she saw something inaccurate, but she did not make it through the entire transcript during the call.[16]

---

[10] Voicemail log, ECF No. 72-9.

[11] May 24, 2016 Email, ECF No. 72-11.

[12] Fishman Decl. ¶ 37, ECF No. 86-3.

[13] Connolly Decl.  ¶ 9, ECF No. 86-14.

[14] *Id.* at ¶¶ 10–11.

[15] *Id*. at ¶ 15.

[16] *Id.*

Based upon the May 31 telephone conversation with McIntosh, Fishman drafted a declaration for McIntosh. On June 3, 2016, he emailed it to USCIS personnel for them to deliver to McIntosh, but neither USCIS personnel nor Fishman was able to reach McIntosh.[17]

On August 2, 2016, McIntosh called Fishman again stating she still wanted to correct her deposition.[18] Fishman arranged for another colleague, Brian Ward, to be present for this call. This call was similar in substance to the May 31 call. During the call, McIntosh again stated she was "bribed" and "threatened" by Malik before her deposition.[19] McIntosh stated she was willing to review her deposition transcript to identify every answer that was inaccurate and she wanted to provide a statement to correct the record.[20]

Fishman updated his previous draft declaration for McIntosh and emailed it to USCIS personnel.[21] This declaration, titled a "Record of Sworn Statement," for McIntosh states in part:

> On August 2, 2016, I telephoned the attorney for the United States, Dillon Fishman. I told Mr. Fishman that I want to correct my deposition testimony. Mr. Fishman instructed me that he could not speak with me until he had a witness present, and then brought a witness into his office.
>
> I want to make a statement about my deposition testimony in this case.  My deposition was conducted on April 22, 2016. The week before my deposition, [Malik] called me and came to my house every day. On one of those days, . . . [Malik] told me I was going to have to give a deposition. He said to keep my mouth shut. He told me to keep my answers short. [Malik] told me to say I don't remember or I don't know and let it go. He said to be careful or I was going to regret it. I took this as a threat. This was a couple days before my deposition. This conversation lasted maybe five minutes.

---

[17] Fishman Decl. ¶ 52.

[18] *Id.* at ¶ 53.

[19] Ward Decl. ¶¶ 11–14, ECF No. 86-17.

[20] *Id.* at ¶ 18.

[21] Fishman Decl.  ¶ 56.

At my deposition, I was scared and nervous. I was worried that I might say the wrong thing. I was worried that something might happen to me. I had to be careful of what I said. I have not told my family members, but I may ask a cousin to come stay with me if I need it.

Some of my answers were not true because I was scared and nervous. In my deposition, I said the last time I had seen [Malik] was about a month before the deposition. This was not true. [Malik] was at my house almost every day the week before. He also called me on the phone. [Malik] told me to say that I had not seen him.

That same week, Afaq also bribed me. He asked me if I wanted to go shopping or go out to dinner. He drove me to Burlington Coat Factory near Wal-Mart on 40 Highway. Afaq bought me four or five outfits, pants and shoes.[22]

On August 4, 2016, two immigration Officers went to McIntosh's home and provided her with the three-page typed "Record of Sworn Statement."[23] McIntosh added the August 4, 2016 date, filled in her birthdate, and signed the Record of Sworn Statement. It also contained the signatures of the two Immigration Officers.

Malik filed a motion for leave to take a second deposition of McIntosh on August 8, 2016. After obtaining leave, Malik took McIntosh's second deposition on August 19, 2016. During this deposition, McIntosh testified that someone from the Government called her three days after her April 22, 2016 deposition and said he thought she lied at her deposition.[24] She later testified that no one from the Government called her after her deposition.[25]

---

[22] McIntosh R. of Sworn Statement, ECF No. 72-10.

[23] Rodriguez Decl. ¶¶ 7–13, ECF No. 86-15.

[24] McIntosh Second Dep. 37:21–41:23 and 61:3–6.

[25] *Id.* at 205:14–19.

McIntosh admitted at her second deposition that she did not send back the errata sheet to correct her testimony from her first April 22, 2016 deposition.[26] She stated that she felt like she "should have" sent it back, but the court reporter "only sent [her] three sheets and it wasn't enough."[27]

The Government did not file or submit the Jacobs Declaration or McIntosh's Sworn Statement in support of its Motion for Summary Judgment (ECF No. 80) or any related briefing, or in its Memorandum in Opposition to Malik's Motion for Summary Judgment (ECF No. 101).

## II.     LEGAL STANDARDS

A court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct.[28]  Attempts to influence the testimony of a witness can be a basis for the ultimate sanction of dismissal,[29] or the lesser sanction of disqualification of counsel, or exclusion of evidence obtained from the compromised witness. But any sanction must have due regard for the doctrine of proportionality.[30] Although the district court has discretion to dismiss, it must be exercised with restraint. Because dismissal is such a harsh sanction, it is appropriate only in cases of "willfulness, bad faith, or [some] fault of

---

[26] McIntosh Second Dep. 49:23–50:1.

[27] *Id.* at 49:16–22.

[28] *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–50 (1991).

[29] *Weibrecht v. Southern Ill. Transfer, Inc.*, 241 F.3d 875 (7th Cir. 2001); *Young v. Office of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 67 (D.D.C. 2003).

[30] *Goswami v. DePaul Univ.*, 8 F. Supp. 3d 1004, 1007 (N.D. Ill. 2014).

petitioner."[31] The following non-exhaustive list of factors may inform the district court's discretion in determining whether dismissal is an appropriate sanction:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.[32]

## III.    WITNESS JACOBS

Malik alleges that counsel for the Government, Fishman, tampered with the testimony of Jacobs, a retired USCIS officer who conducted Malik's July 15, 2004 naturalization interview. The alleged tampering includes feeding information to Jacobs before her deposition, creating a sham declaration, coaching her on the deposition questions, and signaling answers during the deposition.  Malik asks the Court to sanction the Government for its counsel's intentional misconduct by dismissing the First Amended Complaint and striking Jacobs from testifying at trial or in support of the Government's motion for summary judgment.

### A.    Witness Tampering

Malik first alleges that Fishman tampered with Jacobs' testimony by meeting with her before her deposition for the purpose of manipulating her testimony regarding Malik's naturalization interview in 2004. Malik alleges that Jacobs repeatedly admitted to having no independent memory of Malik's interview twelve years prior, but made specific statements in her Declaration and deposition recalling specifically what questions she asked and Malik's responses to those questions. According to Malik, this shows that Fishman improperly tampered with

---

[31] *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995) (quoting the *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976)).

[32] *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005).

Jacobs so that her testimony would support the Government's allegation that Malik lied at his naturalization interview.

The Government denies that Fishman met with Jacobs for the purpose of coaching or tampering with Jacobs' testimony before her deposition. It argues there is nothing improper or unethical about meeting with a witness and preparing a witness for a deposition. The Government argues that Jacobs' own testimony does not support the claim that Fishman coached her. Jacobs testified during her deposition that during the April 22, 2016 meeting with Fishman, they discussed Jacobs' general procedures and practices for taking naturalization interviews and the contents of Malik's N-400 naturalization application. The Government also argues this was before either party had subpoenaed Jacobs for a deposition.

The Court finds it was not improper or unethical for Fishman to meet with Jacobs in anticipation of her deposition.  The Kansas Rules of Professional Conduct[33] prohibit a lawyer representing a client from communicating regarding the subject matter of the action with a person the lawyers knows to be represented by another lawyer in the matter.[34] Jacobs was not represented by counsel, so this prohibition did not apply. With regard to Jacobs, an unrepresented person, Fishman was required under the ethical rules to "not state or imply that [he was] disinterested."[35] He was also required to correct any misunderstanding if he knew or reasonably should have known that Jacobs misunderstood his role in the matter.[36] Jacobs' deposition testimony shows that she understood Fishman's role in this litigation and that the

---

[33] This Court has adopted the Kansas Rules of Professional Conduct ("KRPC") as the "applicable standards of professional conduct" for lawyers appearing before this Court. D. Kan. Rule 83.6.1(a).

[34] KRPC 4.2.

[35] KRPC 4.3.

[36] *Id.*

Government was seeking to revoke Malik's citizenship. Regardless of whether before or after she was subpoenaed and regardless of when Fishman knew of Malik's intent to subpoena Jacobs, Fishman's communications with Jacobs before her deposition did not violate Kansas ethical rules.

Malik provides no legal authority prohibiting Fishman from interviewing or even preparing Jacobs to testify. Restatement (Third) of the Law Governing Lawyers § 116 (2000) expressly provides that "[a] lawyer *may* interview a witness for the purpose of preparing the witness to testify."[37] Comment b to Restatement of Law Governing Lawyers, Section 116, (2000) sets out further guidance on what a lawyer may do in preparing a witness to testify:

> a lawyer may invite the witness to provide truthful testimony favorable to the lawyer's client. Preparation consistent with the rule of this Section may include the following: discussing the role of the witness and effective courtroom demeanor; discussing the witness's recollection and probable testimony; revealing to the witness other testimony or evidence that will be presented and asking the witness to reconsider the witness's recollection or recounting of events in that light; discussing the applicability of law to the events in issue; reviewing the factual context into which the witness's observations or opinions will fit; reviewing documents or other physical evidence that may be introduced; and discussing probable lines of hostile cross-examination that the witness should be prepared to meet. Witness preparation may include rehearsal of testimony. A lawyer may suggest choice of words that might be employed to make the witness's meaning clear. However, a lawyer may not assist the witness to testify falsely as to a material fact.[38]

Malik has not shown that Fishman tampered with Jacobs to elicit false testimony as to a material fact in this case, and the record does not support any such finding. Jacobs consistently stated at her deposition and in her Declaration that she "[does] not have any specific memory of the naturalization interview [she] conducted of Malik on July 15, 2004."[39] Instead, the

---

[37] Emphasis added.

[38] Restatement (Third) of the Law Governing Lawyers § 116, cmt. b (Am. Law Inst. 2000).

[39] Jacobs Decl. ¶ 21, ECF No. 72-5; Jacobs Dep. 93:21–25, ECF No. 86-2.

Declaration and her deposition testimony indicate that they are based upon what she recalled of her past practices of conducting such interviews and the information contained in the N-400 Application that she prepared and reviewed with Fishman. While not recalling Malik's specific interview twelve years before, perhaps Jacobs could recall her past practices when she conducted interviews in "thousands" of naturalization cases, after reviewing the information, notations, and red marks on Malik's N-400 Application.

Malik argues that the email Jacobs sent to Fishman a couple hours after her deposition shows that Jacobs knew her testimony was crucial to the Government proving what Malik said at his naturalization interview, because the Government cannot prove Malik provided "false testimony" without proof of what Malik said under oath.  In her email, Jacobs stated, "Again, I want to apologize if I messed up royally today. I sincerely hope I have not ruined all chances for rescinding Mr. Malik's Naturalization."[40] While Jacobs' email may be relevant to her credibility as a witness, it does not, as Malik argues, prove that Fishman improperly influenced her testimony so that she testified falsely. Indeed, in the part of Jacobs' email message that Malik choose not to quote, Jacobs stated that she did tell the truth during her deposition. Moreover, without any input from Fishman, Jacobs likely could have surmised that the Government was attempting to prove in this denaturalization case that Malik lied in his naturalization documents and interview.

Malik cites several cases in which a party was sanctioned for tampering with a witness. However, the cases cited by Malik are factually distinguishable from this case.  For example, Malik argues the facts present in this case are "quite similar" to the witness tampering found in

---

[40] May 11, 2016 Email, ECF No. 72-1.

*Ramsey v. Broy.*[41] The Court disagrees. *Ramsey* is a bribery case in which the *witness* testified that the plaintiff offered to share the proceeds of the lawsuit if the witness testified to facts supporting the plaintiff's case. These facts are in stark contrast to this case in which there is no allegation of bribery and no evidence that *witness Jacobs* is claiming Fishman coached or tampered with her testimony. Similarly, *Young v. Office of U.S. Senate Sergeant at Arms*[42] involved a witness testifying that the plaintiff called him and attempted to coach him into providing false testimony on the plaintiff's behalf in order to corroborate her allegations of sexual harassment. The other two cases cited by Malik simply do not support his arguments for sanctioning the Government.[43]

With regard to Malik's claim that Fishman deliberately withheld Jacobs' contact information, Fishman states in his Declaration that he did not learn Jacobs' contact information until early April 2016.  He also states that he "wanted to confirm the Justice Department's practices and requirements regarding former Government employees, including *Touhy* regulations" before providing her contact information, which he provided on April 14, 2016.[44] There is no evidence presented that Fishman obtained Jacobs' contact information earlier than April 2016, and the Court finds the two week delay fails to support Malik's claim that Fishman deliberately withheld Jacobs' contact information to thwart Malik's attempts to depose her.  The

---

[41] No. 08-CV-0290-MJR-DGW, 2010 WL 1251199, at *3 (S.D. Ill. Mar. 24, 2010).

[42] 217 F.R.D. 61, 69 (D.D.C. 2003).

[43] *E.g., Goswami v. DePaul Univ.*, 8 F.Supp.3d 1004, 1015 (N.D. Ill. 2014) (rejecting exclusion of the witness or disqualification of counsel as sanctions based upon the lack of any causal connection between the witness's enmity toward defendants and her ex parte meeting with plaintiff's counsel five days before her deposition); *Quela v. Payco-Gen. Am. Creditas, Inc.*, No. 99 C 1904, 2000 WL 656681, at *4 (N.D. Ill. May 18, 2000) (entering liability judgment against the defendant as sanction based upon an affidavit and testimony from the witness that the defendants' employees coerced her into providing fraudulent statements and deposition testimony).

[44] Fishman Suppl. Decl. ¶ 2, ECF No. 96-3.

Court further finds the Government's Rule 26 initial disclosures, which stated that Jacobs could be contacted through counsel for the Government, do not appear to be a deliberate misrepresentation by Fishman to prevent or delay Malik from subpoenaing or deposing Jacobs. Because Jacobs was a former USCIS officer, it was reasonable for the Government to state in its Rule 26 initial disclosures that Jacobs should be contacted through Fishman, until Fishman could confirm the Justice Department's policy on former Government employees.

> ### B.      Sham Declaration

Malik next alleges that the Jacobs Declaration drafted by Fishman is a "sham" because it is based upon information Fishman provided to Jacobs and not her actual knowledge and memory of Malik's naturalization interview. Malik argues the Jacobs Declaration contains a number of statements about specific things Malik allegedly said during his naturalization interview with Jacobs twelve years ago, in 2004. Malik claims the majority of these statements were knowingly false because Jacobs testified she had no specific memory of Malik or his naturalization interview, or they were inconsistent with her deposition testimony.

The Government contends that Fishman drafted the Jacobs Declaration based upon information and answers Jacobs provided to him during their April 22, 2016 meeting. Jacobs repeatedly testified during her deposition that the words in the Declaration were her own. The Government contends there is nothing improper about Fishman drafting a declaration for Jacobs based on the facts she provided during their April 22, 2016 meeting.

Although Malik refers to the Jacobs Declaration as a "sham affidavit," Malik is not arguing the Declaration was drafted by Fishman to create a question of fact to avoid summary

judgment.[45]  Indeed, the Government has not filed or submitted the Jacobs Declaration in

conjunction with either party's motion for summary judgment.  Rather, the Court understands the

crux of Malik's sham affidavit argument to be that Jacobs' statements in her Declaration were

based upon what Fishman wanted Jacobs to say in order to prove Malik gave false testimony at

his naturalization interview, and not information she actually recalled on her own without

Fishman's coaching.

        In support of his argument, Malik points out in his reply that the metadata from the

Jacobs Declaration shows Fishman pre-drafted the Jacobs Declaration before they met on April

22, 2016. Specifically, the "content created" date shows the document was first created on April

5, 2016 and not April 25, 2016, the date Fishman states he first began drafting it. However, the

Government in its Surreply (ECF No. 106) explains that Fishman used a declaration from

another case as a template for the Jacobs Declaration, and this explains why the document

"content creation" date of April 5, 2016 was before the date Fishman stated he drafted the Jacobs

Declaration. The Court finds the Government's explanation for the April 5 "creation date"

refutes Malik's argument that Fishman pre-drafted the Jacobs Declaration before meeting with

Jacobs on April 22, 2016. The Court also notes that Fishman, in his Supplemental Declaration,

affirmatively states that he "did not work on the [D]eclaration until [he] met with Ms. Jacobs,

asked her questions about her practices, and took notes."[46]

        Malik also points to inconsistencies between statements in Jacobs' Declaration and her

deposition testimony to show that certain statements set forth in her Declaration were at

---

        [45] *See* Edward Brunet, John Parry & Martin Redish, *Summary Judgment: Federal Law And Practice* § 8.10 (2016 ed.) (defining "sham affidavit" as "one that creates a question of fact only because it directly contradicts the affiant's deposition testimony" and finding many courts "give [them] no evidentiary effect").

        [46] Fishman Suppl. Decl. ¶ 4.

Fishman's suggestion. Some of those inconsistencies are whether Jacobs recalled that an attorney was present with Malik at his interview, whether Malik spoke English well, and whether Jacobs made a red check mark "next to" versus "through" the question after receiving an oral response from the applicant. These alleged inconsistencies may be grounds for impeaching Jacobs or for attacking her credibility.  However, the Court finds the inconsistencies identified by Malik are not sufficient for the Court to conclude that Fishman improperly coached Jacobs to make statements she did not actually recall and that were therefore false.

Malik next identifies excerpts from Jacobs' testimony as suggesting that parts of her Declaration were prepared jointly by her and Fishman.[47] The Court has reviewed those sections and finds those references to Fishman in drafting the Declaration are consistent with both Fishman and Jacobs' testimony that Fishman typed notes into his laptop computer as Jacobs answered questions during their April 22, 2016 meeting. Furthermore, any discrepancies between Jacobs' Declaration and her deposition testimony are matters that can be explored on cross-examination if Malik chooses, since they go to the question of possible bias. In general, evidence of bias is always relevant, as is evidence that a witness bears a prejudice, hostility, or improper motive.[48] Inherent in all government employee testimony is the potential for bias or prejudice, and any such bias or prejudice may be addressed through cross-examination.[49]

---

[47] Jacobs Dep. 93:17–18 ("I guess that's probably something we agreed on"); 99:5 ("We probably jointly said it"); 101:1–2 ("Q: Who wrote Paragraph 31 [of the Jacobs Declaration]? A: We did.").

[48] *Kansas Med. Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 625, 244 P.3d 642, 661 (2010).

[49] *United States v. Reulet*, No. 14-40005-DDC, 2015 WL 7776876, at *10 (D. Kan. Dec. 2, 2015). *See also Abeyta v. United States*, 368 F.2d 544, 545 (10th Cir. 1966) (noting that cross-examination may be used to show bias or prejudice).

C.      **Witness Signaling**

Malik also alleges Fishman interfered with Jacobs' testimony at least twice. Specifically, during her deposition when questioned regarding how Fishman had prepared her sworn declaration, and also by asserting improper objections.  Malik alleges Fishman shook his head no during Jacobs' testimony. Fishman states instead that he "furrowed his brow at opposing counsel" during an improper question. The Court has reviewed this portion of Jacobs' deposition transcript and notes that any signaling by Fishman was quickly curtailed by Malik's counsel. Furthermore, the Court finds the alleged signaling to have happened during a confusing question asking Jacobs where Fishman typed "it," which could have meant either the Declaration or Fishman's notes of the meeting.

Additionally, although Fishman did interpose an improper speaking objection at one point in the Jacobs' deposition to which Malik takes issue, Jacobs was allowed to answer and it appears to have been an isolated instance. There is otherwise no indication Fishman interfered with Jacobs' testimony.

In summary, none of the conduct by Fishman of which Malik complains constituted tampering with Jacobs' testimony or was otherwise improper conduct relative to Jacobs. Additionally, Malik offers no support or persuasive authority for the sanction he requests against the Government.

IV.     **WITNESS McINTOSH**

Malik next argues that two of Fishman's actions with respect to witness McIntosh are sanctionable conduct and thereby warrant dismissal of the Government's First Amended Complaint.  Malik first takes issue with Fishman drafting an allegedly perjurious sworn statement for McIntosh in early August 2016, three months after her first deposition, when he

was aware McIntosh had been attempting to blackmail Malik with such a threat.  Malik also alleges that Fishman called McIntosh three days after her April 22, 2016 deposition, threatening her with perjury charges if she did not change her testimony.

### A.  Drafting of Sworn Statement

The Court finds nothing improper about Fishman's drafting of the sworn statement for McIntosh to sign. Like the earlier May 2, 2016 call, Fishman arranged for a colleague to listen in on the August 2, 2016 call from McIntosh. The colleague's recollection of McIntosh's statements during the call are consistent with her sworn statement. McIntosh has not denied that she called Fishman to correct the record, or asserted that the statements in her sworn statement do not reflect what she actually said during the August 2, 2016 telephone call with Fishman.

Malik asserts that the sworn statement Fishman drafted for McIntosh contains statements that are demonstrably false. Malik has not, however, shown any particular statement in McIntosh's sworn statement to be perjurious or false. Malik offers as an example McIntosh's statement that Malik threatened her in a conversation in her house before her deposition. Malik contends this statement is false because at her second deposition McIntosh recited the conversation word for word, and it didn't contain any threat. While that is true, Malik fails to note that McIntosh consistently did maintain in her second deposition that she believed Malik *did* threaten her before her first deposition, even after repeated questions by Malik's counsel. During her second deposition, she testified that she understood Malik's statements to her before her deposition to be very careful about what she said at her deposition, to not go into detail, and to keep her mouth shut to be threats.[50] The Court has reviewed McIntosh's second deposition and notes she testified that she did make all of the statements and provide all of the information

---

[50] McIntosh Second Dep. 231:13 –232:14.

18

included in the sworn statement that Fishman prepared. With limited exceptions,[51] she also

testified the information contained in the sworn statement was true. That McIntosh made those

statements was also corroborated by Fishman's colleagues who listened in on the conversations

between Fishman and McIntosh. Thus, Malik's contention that McIntosh's sworn statement is

perjurious and that Fishman knew the sworn statement was false at the time it was taken are not

substantiated.

The Court also finds Fishman's alleged knowledge regarding the two McIntosh letters,

which Malik characterizes as "blackmail" letters, does not make his drafting of the sworn

statement for McIntosh sanctionable. The McIntosh letters are less than clear and in part

illegible. While McIntosh states in them she is going to change her testimony and demands to see

Malik, no other demand is made. McIntosh also states twice that she is going to tell how she lied.

All these statements in the McIntosh letters are consistent with her sworn statement. If Fishman

believed McIntosh when she told him she had lied during her first deposition because she had

been threatened by Malik, it was appropriate for him to take her sworn statement to clarify the

record.[52]

### B.       Calling Witness McIntosh Three Days after her First Deposition

Malik admits that "it is not certain" Fishman actually called McIntosh after her

deposition to threaten her with perjury charges if she did not change her testimony. While

McIntosh states she talked to "a lawyer" in one of the letters she sent to Malik in mid-May,

---

[51] For example, McIntosh admitted during her second deposition that Malik did not buy her as
many clothing outfits as stated in her sworn statement. McIntosh Second Dep. 226:12–25.

[52] *See* KRPC 3.3(b) ("A lawyer who represents a client in an adjudicative proceeding and who
knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct
related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to
the tribunal.").

McIntosh's testimony at her second deposition conflicts as to the identity of the specific lawyer she was referring in her letters.[53] Given that the only evidence on this allegation is from McIntosh, whose testimony has been contradictory, it is unclear whether a lawyer actually telephoned McIntosh shortly after her first deposition, and the identity of any such lawyer. The Court finds Malik's allegation that Fishman called McIntosh shortly after her first deposition unsupported by any credible evidence.

In summary, the Court finds the actions of Fishman with regard to witnesses Jacobs and McIntosh were not improper or otherwise sanctionable conduct. Moreover, the sanctions which Malik seeks, dismissal of the Third Amended Complaint or striking the witnesses from testifying, are not supported by the facts or the law. The veracity of witnesses Jacobs and McIntosh, and any inconsistencies in their depositions and sworn statements, are proper for cross-examination and determination by the trier of fact.

**IT IS THEREFORE ORDERED THAT** Malik's Motion for Sanctions for Plaintiff's Willful Tampering with a Material Witness (ECF No. 71) is denied.

**IT IS FURTHER ORDERED THAT** each party shall bear its own costs related to this motion.

**IT IS SO ORDERED.**

Dated this 20th day of January, 2017, at Kansas City, Kansas.

         *s/ Teresa J. James*
         Teresa J. James
         U. S. Magistrate Judge

---

[53] In her second deposition, McIntosh at first testified that she was referring to Fishman in her letter when she referred to "a lawyer." McIntosh Second Dep. 53:2–7 and 58:21-24. McIntosh later testified it was not Fishman and she did not remember which lawyer she was referring to in her letter. *Id.* at 64:19–65:6.

20