IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-cv-9092-CM-TJJ |
| ) | |
| AFAQ AHMED MALIK, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This is a denaturalization case brought by Plaintiff United States of America ("the Government") against naturalized citizen Defendant Afaq Malik ("Malik"). This matter is pending before the Court on Malik's Motion to Compel Discovery Response and for Sanctions (ECF No. 113) and Motion for Leave to Conduct Supplemental Discovery (ECF No. 116). Malik requests an order compelling production of documents from the Government and for sanctions. He also requests leave to conduct supplemental discovery. The Government opposes the motions. As explained below, the Court grants Malik's Motion to Compel Discovery Response. Malik's request for sanctions and Motion for Leave to Conduct Supplemental Discovery are both taken under advisement pending the Government's production of the discovery ordered in this Memorandum and Order.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Malik served his first set of written discovery requests upon the Government on December 9, 2015. Request for Production No. 3 sought "documents related to [Malik] . . . and the allegations in the Complaint." Request No. 5 asked the Government to produce:

any documents utilized, consulted, created, or relied upon by the Fraud Detection and National Security Directorate (FDNS), Homeland Security Investigations (HSI) or any other federal or state agency in investigating [Malik], . . . , including any person's notes, recordings, messages, emails, text messages, instant messages, voice messages, or any other documents related to [Malik].[1]

On January 8, 2016, the Government served its Response to Malik's First Interrogatories and Requests for Production of Documents and ESI,[2] and a two-page privilege log. The Government objected to Request No. 3 as "overbroad and vague," and objected to both Request Nos. 3 and 5 to the extent they sought "documents containing information protected by the law enforcement, deliberative process, or attorney-client privileges, or the work-product doctrine."[3] However, in response to Request No. 5, the Government also incorporated its response to Request No. 2, stating it would produce some specific documents and "to the extent there [were] additional responsive documents, [the Government ] intends to produce such documents with appropriate redactions." Also on January 8, 2016, Malik served the Government with a copy of his Pakistani Notice of Divorce as part of his Rule 26(a) disclosures.

On January 9, 2016, Malik informed the Government that he believed the Government's responses were inadequate. On February 9, 2016, the Government clarified its objections. On February 10, 2016, Malik filed a motion to compel documents with respect to the Government's January 8, 2016 discovery responses, seeking production of three documents the Government withheld or redacted under the deliberative process privilege or law enforcement privilege. Malik's motion did not raise any other issue with respect to the Government's discovery responses and objections. On June 7, 2016, after the motion to compel was fully briefed, the

---

[1] Malik's First Interrogs. & Reqs. for Produc. of Docs. & ESI (ECF No. 114-1).

[2] *See* Cert. of Service (ECF No. 25).

[3] Government's Objs. & Resps. to Malik's First Reqs. for Produc. of Docs. (ECF No. 27-2).

Court denied Malik's motion, finding that the documents and redactions were protected from disclosure under the asserted privileges.[4]

The original Scheduling Order deadline for the parties to complete discovery was March 10, 2016, but that deadline was extended three times, ultimately to August 19, 2016.[5] The final pretrial conference was held on September 19, 2016. The following week, on September 28, 2016, the parties informally advised the Court of the Government's intent to move to reopen discovery. Malik opposed any such motion for further discovery.[6] The Government later advised the Court that it would not be filing a motion to reopen discovery.[7] The Pretrial Order (ECF No. 75) was entered on September 29, 2016.

On November 30, 2016, counsel for the Government emailed a document to Malik's counsel, stating the document "[was] responsive to Request for Production No. 5."[8] The document was a copy of the Homeland Security Investigations ("HSI") Report of Investigation regarding Malik's Pakistani Notice of Divorce ("Interim Report"). It is date stamped November 18, 2016, but shows a "Date Approved" of September 20, 2016, and a "Case Opened" date of March 2, 2016.[9] The Interim Report revealed that on February 25, 2016 the HSI Kansas City office received a request to assist in the civil denaturalization of Malik, and on June 14, 2016 investigators traveled to the Bhara Kahu, Pakistan Union Council's office to inquire about the Notice of Divorce Malik had produced in his Rule 26 initial disclosures. The investigators

---

[4] *See* June 7, 2016 Mem. & Order (ECF No. 60).

[5] *See* Aug. 9, 2016 Order (ECF No. 66) and Pretrial Order (ECF No. 75).

[6] *See* Sept. 28, 2016 Order (ECF No. 74).

[7] *See* docket text accompanying the September 29, 2016 filing of the Pretrial Order (ECF No. 75).

[8] Nov. 30, 2016 Belsan Email (ECF No. 114-2).

[9] Interim Report (ECF No. 114-2).

inspected Malik's Pakistan Union Council file (the "Pakistani file") and found it contained a Notice of Divorce similar to the one Malik previously produced. However, the report noted three discrepancies between the two Notices of Divorce. The Interim Report stated that the Secretary of the Union Council verified the Notice of Divorce from the Pakistani file with his signature, date, and stamp, provided the investigators a copy, and HSI Islamabad would send a scanned copy of the verified document to HSI Kansas City "via email." The Interim Report concludes with the statement: "Investigation continues."[10]

Malik's counsel replied to the November 30, 2016 email, asking that the verified copy of the divorce decree from the Pakistani file mentioned in the Interim Report, be forwarded to him.[11] On December 1, 2016, counsel for the Government replied, stating the Interim Report "was the only document [he] received to date. It was not accompanied by any attachments." Government counsel further advised that he "raised the issue with [his] clients and [would] provide those documents if and when [he was] able to obtain them."[12]

Later on December 1, 2016, counsel for the Government emailed the referenced verified copy of the Notice of Divorce to Malik's counsel. That document bears the handwritten notation "verified as per record" and the stamp of "Secretary Union Council Bhara Kahu Federal Area Islamabad" next to the handwritten date June 14, 2016.

On December 5, 2016, Malik's counsel sent an email expressing his frustration that the Government had withheld responsive documents and asking whether the Government's counsel was "aware of any additional documents or ESI responsive to [Malik's discovery] requests that

---

[10] *Id.*

[11] Nov. 30, 2016 Hoppock Email (ECF No. 114-4).

[12] Dec. 1, 2016 Belsan Email (ECF No. 114-4).

4

[hadn't] been produced or identified on a privilege log."[13] Malik's counsel also inquired whether the Government's former counsel or his assistant were aware of the verified divorce document in June 2016, or the report claiming discrepancies in September 2016.[14]

Counsel for the Government replied by email the same day, stating the Government strongly disagreed with Malik's "characterization of the Government's production in this case."[15] The email stated that the Government produced the Interim Report promptly and the "[Department of Justice] did not know of such documents until late-November 2016."[16] The email concluded "[f]inally, as we have previously indicated, based on our discussions with our clients, [counsel for the Government] are not aware of any other documents or ESI in this case that you are interested in or would deem responsive."[17]

On May 19, 2017, Malik's counsel emailed counsel for the Government, asking if there had been any movement in the ongoing investigation into Malik's Pakistani divorce decree and whether there were any additional documents that would need to be produced.[18] The email also indicated Malik's intent to depose the author of the Interim Report if the author would be testifying at trial.[19]

On May 25, 2017, counsel for the Government sent an email to Malik's counsel, which stated that the investigation into Malik's Pakistani divorce was closed "last year" and attached

---

[13] Dec. 5, 2016 Hoppock Email (ECF No. 114-5).

[14] *Id.*

[15] Dec. 5, 2016 Belsan Email (ECF No. 114-6).

[16] *Id.*

[17] *Id.*

[18] May 19, 2017 Hoppock Email (ECF No. 114-7).

[19] *Id.*

the HSI's final report of the investigation ("Final Report").[20] The Final Report was dated May 24, 2017, with an October 24, 2016 "Date Approved," and stated again that HSI received a request to assist with the investigation on February 25, 2016.[21] It also stated that "[o]n September 10, 2016, the HSI Kansas City office requested to close the case, as they had received all the information, which was being investigated."[22] The Final Report concluded, "Investigation is closed."

On June 9, 2017, Malik's counsel emailed the Government asking that it produce the February 25, 2016 and September 10, 2016 communications referenced in the Final Report.[23]

On June 22, 2017, the Government produced 22 pages of documents associated with the Final Report, including redacted February 2016 emails.[24] The Government also produced a privilege log for five of the February 2016 emails it produced with the substance redacted.

On July 4, 2017, Malik filed his Motion to Compel Discovery Response and for Sanctions (ECF No. 113), Memorandum in Support of Motion to Compel Discovery Responses and for Sanctions (ECF No. 114), and Motion for Leave to Conduct Supplemental Discovery (ECF No. 116).[25] On August 3, 2017, the Government filed a letter (ECF No. 124) advising that it was no longer claiming the law enforcement privilege for the February 2016 emails and

---

[20] May 25, 2017 Belsan Email (ECF No. 114-8).

[21] Final Report (ECF No. 114-8).

[22] *Id.*

[23] June 9, 2017 Hoppock Email (ECF No. 114-9).

[24] June 22, 2017 Carilli Email (ECF No. 123-2).

[25] On the face of his Motion for Leave to Conduct Supplemental Discovery, Malik references an "accompanying memorandum in support of his motion." It appears Malik intended his Memorandum in Support of his Motion to Compel Discovery Responses and for Sanctions (ECF No. 114) to also support his motion for supplemental discovery.

attached its amended privilege log. Malik filed his response (ECF No. 125) to the Government's letter on August 14, 2017, in which he maintains the Government's amended privilege log is still deficient with regard to the assertions of attorney-client privilege and work product as to these emails.

On August 22, 2017, the Court ordered the Government to submit unredacted copies of the emails listed on the privilege log for an *in camera* review.[26] The Government submitted unredacted copies of the five emails on August 22, 2017. On August 29, 2017, Malik filed a motion to continue the October 4, 2017 court trial date.

## II.     MOTION TO COMPEL DISCOVERY

Malik requests an order compelling the Government to produce documents and electronically stored information ("ESI") responsive to Request No. 5. He also requests the Government be compelled to produce unredacted copies of the five emails listed on the privilege log because they are either not subject to, or the Government has waived, any claimed privilege or protection. He alternatively requests that the Court conduct an *in camera* review of the redacted emails to determine whether they are in fact privileged or protected. Finally, he asks the Court to sanction the Government for its repeated failure to disclose evidence he describes as "exculpatory."

As an initial matter, the Government asks the Court to summarily deny Malik's motion to compel on the grounds Malik failed to timely raise any issue with the Government's objections to Malik's Request No. 5. It argues Malik should be foreclosed from raising an issue with the objections some nineteen months after the Government served its original discovery responses and objections. The Court rejects this argument. In response to Malik's Request No. 5, the

---

[26] *See* Aug. 22, 2017 Order (ECF No. 126).

Government objected on privilege grounds but stated that, subject to the objection it *would* produce responsive documents with necessary redactions. The Government also had an ongoing duty to timely supplement its discovery response and production of documents with any additional responsive documents subsequently identified. Malik moved to compel in a timely manner with respect to the Government's *supplemental* production of documents responsive to Request No. 5 and its privilege log, which the Government did not produce until June 22, 2017.[27]

The Government also argues that, with respect to its June 22, 2017 production of documents, it was under no obligation to produce such documents after the close of discovery,[28] but nevertheless it voluntarily produced all non-privileged relevant information pursuant to Rule 26(b)(1). The Court disagrees with the Government's assertion that it was under no obligation to produce the emails and other documents regarding the HSI investigation. These emails were requests to investigate and communications regarding investigation of Malik's foreign divorce documents, which were responsive to Request No. 5 as documents "utilized," "created" or "relied upon" by the Government in "investigating [Malik]."[29] These emails were sent in February 2016, shortly after the Government's discovery responses to this set of Malik's requests for production were due and while Malik's first motion to compel as to this set of discovery requests was pending.

---

[27] *See Neonatal Prod. Grp., Inc., v. Shields*, No. 13-2601-DDC, 2015 WL 7078796, at *2–3 (D. Kan. Nov. 13, 2015) (supplemental production of discovery responses was the triggering event for the D. Kan. Rule 37.1(b) 30-day deadline for filing motion to compel).

[28] This contradicts the Government's position regarding the Interim Report, which the Government voluntarily produced more than two months after the discovery deadline without any prompting from Malik, noting that the Interim Report was responsive to Malik's Request No. 5.

[29] The Government concedes that Interim and Final Reports are responsive to Malik's Request No. 5. *See* Nov. 30, 2016 Belsan Email (stating the attached Interim Report was "responsive to Request for Production No. 5.") and the Government's Resp. (ECF No. 123) at 16 n.6 ("The investigation reports are responsive to R[equest] No. 5 only.").

The Government makes additional arguments why the Court should deny Malik's motion to compel. These arguments will be addressed in more depth below.

A.     **Request to Apply *Brady* Criminal Discovery Standards**

Malik characterizes the discovery he seeks in his motion as "exculpatory,"[30] and urges the Court to adopt and apply the criminal discovery standards set forth in *Brady v. Maryland*[31] in this denaturalization proceeding commenced pursuant to 8 U.S.C. § 1451(a). Malik argues that while civil denaturalization proceedings are not criminal in nature, this Court should apply the *Brady* standard, which requires the government to disclose exculpatory evidence to a defendant in a criminal case. He claims it is warranted here given the statutory burden of proof and the extreme consequences that will result to him if denaturalized. He relies upon the case, *Demjanjuk v. Petrovsky*, where the Sixth Circuit held that "*Brady* should be extended to cover denaturalization and extradition cases where the government seeks denaturalization or extradition based on proof of alleged criminal activities of the party proceeded against."[32]

The Government contends discovery in civil denaturalization actions is governed by the Federal Rules of Civil Procedure and the unique discovery obligations applicable to criminal cases, including those in *Brady*, do not apply. It argues courts have declined to apply *Brady* in all but the most exceptional civil proceedings. The Government points out that Malik cites only the

---

[30] Malik claims the Interim Report "is without a doubt exculpatory despite several bogus 'discrepancies' it claims to have found." According to Malik, the Interim Report concluded that the Secretary of the Union Council in Bhara Kahu, Mr. Mahmood Ul Hassan "verified the copy [of Mr. Malik's divorce decree] from his own record as correct and provided [the investigators] with a copy of Notice of Divorce, inscribed with 'verified as per record' including his signatures, date, and stamp."

[31] 373 U.S. 83, 87 (1963).

[32] 10 F.3d 338, 353 (6th Cir. 1993).

9

*Demjanjuk* case for his bold proclamation that "courts have generally applied criminal discovery standards to denaturalization cases."

In the absence of any controlling Supreme Court or Tenth Circuit precedent, the Court declines to adopt and apply the criminal discovery standards set forth in *Brady v. Maryland*[33] to this denaturalization case. "A denaturalization suit is not a criminal proceeding. But neither is it an ordinary civil action since it involves an important adjudication of status."[34] The Sixth Circuit Court of Appeals case cited by Malik, *Demjanjuk v. Petrovsky*, is not controlling on this Court and is furthermore factually distinguishable. In *Demjanjuk,* the government sought to denaturalize Demjanjuk, an alleged Nazi war criminal, based both on his misrepresentations when he applied for citizenship and the capital charges brought against him.[35] These facts are quite different from this case where the Government is not seeking denaturalization based upon allegedly criminal activity.[36] Discovery thus far in this civil denaturalization case has proceeded under the Federal Rules of Civil Procedure and should continue to proceed under those rules. Malik's request to apply the *Brady* criminal discovery standards in this case is denied.

---

[33] 373 U.S. 83, 87 (1963).

[34] *Schneiderman v. United States*, 320 U.S. 118, 160 (1943).

[35] *Demjanjuk*, 10 F.3d at 353.

[36] Although one of the grounds the Government originally asserted as a basis for denaturalization was bigamy, the Government later dismissed its Count IV relating to bigamy. *See* May 19, 2017 Mem. & Order (ECF No. 111) (dismissing Count IV without any determination on its merits based upon the Government's representation it was no longer pursuing that claim).

### B. Request for *In Camera* Review of Emails Listed on the Government's Privilege Log

Malik raises an issue with the sufficiency of the privilege logs provided by the Government with respect to the five February 2016 emails listed on the log. Malik argues that—based upon the information provided on the privilege log—the emails listed do not appear to be protected from disclosure as attorney work-product or under the attorney-client privilege, and the Government should not be permitted to shield from disclosure otherwise discoverable evidence by invoking the protection without explanation. He alternatively requests that the Court conduct an *in camera* review of the emails listed on the privilege log to determine whether they are in fact privileged or protected.

Based upon its review of the parties' briefing, the Government's privilege logs, and the redacted emails, and in light of the facts and circumstances of this case, the Court ordered the Government to submit unredacted copies of the five emails listed on the Government's privilege log for *in camera* review. The Court has completed its *in camera* review of the emails at issue.

### C. Waiver of Attorney-Client Privilege and Work Product Protections of Emails Listed on Privilege Log

Malik challenges the Government's assertion of the attorney-client privilege for one of the emails and the assertion of "attorney work product privilege" for all five emails listed on the June 22, 2017 privilege log. Malik argues that the Government has waived any claimed privilege and work product protections for these emails by failing to timely assert privilege or work product.

Federal Rule of Civil Procedure 26(b)(5)(A) provides that when a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and
(ii) describe the nature of the documents, communications . . . not produced or disclosed . . . in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the claim.

The party who withholds discovery materials under a claim of privilege or work product must provide sufficient information, usually in the form of a privilege log, to enable the party seeking the discovery to evaluate the applicability of the privilege or protection.[37] "Failure to follow the Federal Rules of Civil Procedure may result in waiver of the attorney-client privilege and/or work-product protection."[38] If a party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived.[39]

Under Rule 26(b)(5)(A), a party must expressly make the claim of privilege or protection at the time it "withholds" the information. For a party responding to a request for production, Rule 34(b)(2)(A) requires that the party "must respond within 30 days after being served." Thus, the date a party is deemed to "withhold" discoverable material is the date when the party's responses to the requests for production are due.

Federal Rule of Civil Procedure 26(e)(1) governs a party's duty to supplement its Rule 26(a)(1) initial disclosures and discovery responses:

---

[37] *H & L Assocs. of Kan. City, LLC v. Midwestern Indem. Co.*, No. 12-2713-EFM-DJW, 2013 WL 5774844, at *5 (D. Kan. Oct. 25, 2013) (citing *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1266 (D. Kan. 2008). *See also Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 497 (D. Kan. 1998) ("In the absence of good cause to excuse a failure to timely object, all objections not timely asserted are waived.").

[38] *H & L Assocs.*, 2013 WL 5774844, at *5

[39] *Id.* (citing *Sprint Commc'ns Co. L.P. v. Big River Tel. Co., LLC*, No. 08-2046-JWL, 2009 WL 2878446, at *1 (D. Kan. Sept. 2, 2009)).

> A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

The original Scheduling Order (ECF No. 12) entered in this case also reminds the parties of their duty to periodically supplement as required by Rule 26(e).[40] The Government thus had an obligation under Fed. R. Civ. P. 26(e)(1)(A) to supplement its production of documents responsive to Malik's Request No. 5 and update its privilege log in a "timely manner," when it learned the discovery response was incomplete or incorrect.

All five of the redacted emails listed on the Government's privilege log were sent in February 2016 and pertain to the request for HSI to investigate the authenticity of Malik's Pakistani divorce documents. The creator and recipients of the emails were a Government lawyer or Government investigating agents, hence the Government necessarily was aware of them at the time they were sent. Moreover, the Government's former counsel in this case, Dillon Fishman, had specific knowledge in February 2016 of the HSI's investigation into Malik's Pakistani divorce documents because he was the one who requested the investigation. This all occurred while Malik's first motion to compel was pending and well before the discovery deadline expired on August 19, 2016. Yet, the Government failed to provide its privilege log for these emails until June 22, 2017, approximately *nine* months after the Final Report states the investigation into Malik's divorce documents concluded, *ten* months after the discovery

---

[40] Scheduling Order § 2c (ECF No. 12).

deadline, and *sixteen* months after the emails were generated. The Court finds that, by any measure, the Government failed to timely assert, and therefore waived, its claim of privilege and work product as to the five February 2016 emails.

The Government claims that its current counsel was not aware of the existence of the Interim Report until after the discovery period closed, and promptly produced the report upon learning of it. The Government cannot rely upon lack of knowledge by its current counsel to justify its failure to timely supplement its responses to Malik's Request No. 5. Any knowledge its former counsel had regarding the HSI's investigation would be imputed to the Government.[41]

Furthermore, this is not a case where "[m]inor procedural violations, good faith attempts at compliance and other such mitigating circumstances bear against finding waiver."[42] Rather, the Court concludes that a finding of waiver is appropriate here based upon the Government's unjustifiable delay in asserting a claim for privilege or work product with respect to these five emails.[43] The Government shall produce unredacted copies of the five February 2016 emails to Malik's counsel **within seven (7) days of the date of this Memorandum and Order**.

### D. Supplemental Documents Responsive to First Request No. 5

Malik requests that the Court compel the Government to supplement its response by producing all documents and ESI responsive to his Request No. 5. Malik specifically seeks (1)

---

[41] *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990) ("[u]nder our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney") (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)). *See also Long v. Bd. of Governors of the Fed. Reserve Sys.*, 117 F.3d 1145, 1153 (10th Cir. 1997) (attorney's knowledge imputed to his client).

[42] *White*, 586 F. Supp. 2d at 1266.

[43] *See H & L Assocs.*, 2013 WL 5774844, at *5 (courts often reserve privilege waiver based upon the untimely production of a privilege log for those cases where the offending party "unjustifiably delayed in responding to the discovery requests or acted in bad faith.").

any September 10, 2016 correspondence between the HSI Kansas City office and the investigators referenced in the Final Report; (2) any correspondence from any of the individuals listed in the Interim and Final Reports, including HSI Assistant Attache Ramon, Investigations Assistant Noor Agha Mehmand, and Investigations Assistant Mohammad Yousaf; and (3) the message referenced in the Interim Report, purportedly from HSI Attache, Islamabad "HSI Kansas City Office via e-mail."

Malik claims that the Government continues its refusal to state whether the September 10, 2016 communication from HSI in Kansas City to the investigators referenced in the Final Report still exists and refuses to produce it or mention it on the privilege logs. Malik argues that the privilege log the Government produced on June 22, 2017 does not reference or describe any September 2016 communications and therefore the Government should be required to produce any such responsive documents and ESI.

The Government argues that Malik's motions are untimely and it is critical throughout its briefing of Malik for not timely filing his motion to compel before the close of discovery or soon thereafter.[44] While Malik offers a weak explanation why he waited more than five months until May 19, 2017 to follow-up on the status of the HSI investigation and the Government's production of additional documents, the Government's criticism of Malik's delay is a bit like the pot calling the kettle black. The Court has already discussed the Government's unjustifiably delinquent service of its privilege log regarding the February 2016 emails. Additionally, Malik could not have moved to compel before the August 19, 2016 discovery deadline, because the Government did not produce the Interim Report that revealed the existence of the investigation

---

[44] The Government complains, for example, that Malik's motion to compel was filed "*eleven* months after the close of the discovery period and *seven* months after [Malik] was aware of the investigation." (ECF No. 123 at 1-2) (emphasis in original) .

15

until November 30, 2016. The Government dismisses this fact, explaining that it produced the Interim Report "promptly" and that DOJ did not know of such documents until late-November 2016. But the Interim Report reveals the June 14, 2016 meeting in Pakistan when the investigators compared the Notice of Divorce produced by Malik to the one contained in the Pakistani file. That meeting revealed information critical to this case. Yet, the Government still has not produced the email transmitting the verified Notice of Divorce investigators obtained June 14, 2016, or otherwise answered the question of when the Government was notified of the substance of the June 14, 2016 meeting.

The Interim Report indicated the investigation into Malik's Pakistani divorce was continuing. But on May 25, 2017, after Malik's counsel inquired on May 19, 2017 regarding the ongoing investigation, Government counsel forwarded a Final Report regarding the investigation dated May 24, 2017, but with a "Date Approved" of October 24, 2016. Notably, the Final Report concludes: "[on] September 10, 2016, the HSI Kansas City office requested to close the case, *as they had received all the information, which was being investigated*."[45] The highlighted language seems to suggest that the HSI Kansas City office had received the Interim Report and information regarding its contents by September 10, 2016. Yet, the Government's counsel did not produce the Interim Report to Malik's counsel until November 30, 2016 or the Final Report until May 25, 2017. As already discussed above, Malik timely moved to compel with respect to the Government's supplemental production on June 22, 2017.

The Government also argues that it has met its obligations for supplementation under Fed. R. Civ. P. 26(e) with respect to its continuing production of documents responsive to Malik's Request No. 5, specifically the Final Report. In its briefing and in emails attached as

---

[45] Final Report (ECF No. 114-8) (emphasis added).

exhibits to its briefs, the Government makes various representations to the effect that it has produced all documents responsive to Malik's request. But, the Court finds nothing in the record indicating that the Government has produced any documents or privilege log reflecting the September 10, 2016 request to close the HSI investigation; the emailing of the Notice of Divorce, verified on June 14, 2016, to the HSI Kansas City office; or the forwarding of the Interim Report from Pakistan to the HSI Kansas City office. The Government's piecemeal production to date suggests that there are likely additional documents responsive to Malik's Request No. 5 that have not yet been produced.

Accordingly, pursuant to Rule 26(e)(1)(B), the Court orders the Government to serve its supplemental response to Malik's Request No. 5 and to supplement its production of documents responsive to Request No. 5, including the following:

> (1) any September 10, 2016 correspondence, email or other documents between the HSI Kansas City office and the investigators referenced in the Final Report or others about the status of the investigation or the closing of the investigation;
>
> (2) any notes, messages, or correspondence, email or other documents from any of the individuals listed in the Interim and Final Reports, including HSI Assistant Attache Ramon, Investigations Assistant Noor Agha Mehmand, and Investigations Assistant Mohammad Yousaf;
>
> (3) the message referenced in the Interim Report, purportedly from HSI Attache, Islamabad "HSI Kansas City Office via e-mail"; and
>
> (4) any notes, messages, correspondence, email, or other documents regarding the June 14, 2016 meeting at the Pakistani Union Council's office.

With regard to any documents the Government produces pursuant to this Memorandum and Order, for the same reasons discussed in Section II.C. above, the Court finds the Government unjustifiably delayed in asserting any claim of privilege or work product protection and providing a privilege log, and has therefore waived any privilege or protection with respect to these documents.

The Government shall also state in its supplemental response to Request No. 5 when the Government, through any of its agents, learned of the June 14, 2016 meeting, who was provided the information, and what information regarding the meeting was provided.

### E. Requests for Sanctions and to Conduct Supplemental Discovery

In light of the Court's rulings above, Malik's Motion for Sanctions and Motion for Leave to Conduct Supplemental Discovery are taken under advisement pending the Government's production of the discovery ordered in this Memorandum and Order. The Government's supplemental response to Request No. 5 and any supplemental production of documents will inform the Court's decisions regarding whether and, if so to what extent, to award sanctions and/or to allow supplemental discovery.

**IT IS THEREFORE ORDERED THAT** Malik's Motion to Compel Discovery Response (ECF No. 113) is granted. Malik's request for *in camera* review of the emails listed on the privilege log is granted. Malik's request for an order finding the Government waived its privileges and work product protections as to the emails identified on the June 22, 2017 privilege log is granted. Finally, Malik's request for an order compelling the Government to supplement and produce documents and ESI responsive to Malik's First Request No. 5 is granted.

**<u>Within seven (7) days of the date of this Memorandum and Order</u>**, the Government shall serve its supplemental response to Malik's Request No. 5, and produce to Malik unredacted copies of the five February 2016 emails listed on the Government's June 22, 2017 privilege log, <u>and</u> all documents and ESI responsive to Request No. 5, including the following:

> (1) any September 10, 2016 correspondence, email or other documents between the HSI Kansas City office and the investigators referenced in the Final Report or others about the status of the investigation or the closing of the investigation;
>
> (2) any notes, messages, or correspondence, email or other documents from any of the individuals listed in the Interim and Final Reports, including HSI Assistant

Attache Ramon, Investigations Assistant Noor Agha Mehmand, and Investigations Assistant Mohammad Yousaf;

(3) the message referenced in the Interim Report, purportedly from HSI Attache, Islamabad "HSI Kansas City Office via e-mail"; and

(4) any notes, messages, correspondence, email, or other documents regarding the June 14, 2016 meeting at the Pakistani Union Council's office.

The Government shall state in its supplemental response to Malik's Request No. 5 when the Government, through any of its agents, learned of the June 14, 2016 meeting, who was provided the information, and what information regarding the meeting was provided.

If the documents ordered produced above existed at one time but no longer exist and cannot be produced, the Government shall state in its supplemental response to Malik's Request No. 5 why the documents and/or ESI could not be produced.

The Government shall also email copies of its supplemental response to First Request No. 5, and copies of all documents produced to the chambers of the undersigned Magistrate Judge when it serves them upon Malik.

**IT IS FURTHER ORDERED THAT** Malik's request for sanctions and Motion for Leave to Conduct Supplemental Discovery (ECF No. 116) are taken under advisement pending the Government's service of its supplemental response to Malik's Request No. 5 and any supplemental production of documents as ordered in this Memorandum and Order.

**IT IS SO ORDERED.**

Dated this 7th day of September 2017, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge